(Nos. 38323-38324 cons.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CORNELIUS L. MORIARITY, Plaintiff in Error.

*Opinion filed January 25, 1966.*

JOHN R. SNIVELY, of Rockford, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM R. NASH, State's Attorney, of Rockford, (FRED G. LEACH, Assistant Attorney General, and JOHN W. NIELSEN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Two writs of error under Rule 65—1 have been consolidated for opinion. The defendant, Cornelius Moriarity, seeks review of judgments of conviction entered by the circuit court of Winnebago County on jury verdicts finding him guilty of the crimes of attempted armed robbery and robbery. He contends that he was deprived of his constitutional right to a speedy trial and that trial errors deprived him of a fair trial.

On the night of February 2, 1961, a man armed with a gun attempted to rob Charles R. Wescott, the assistant manager of a discount store in the city of Rockford, but he ran away without accomplishing his purpose when a burglar alarm started to ring. On September 23, 1961, in the same city, a man thought to be armed with a knife robbed Hattie Sunquist of approximately $200. The man was not apprehended.

Rockford authorities subsequently learned that defendant had been convicted of a criminal offense in Indiana on March 6, 1962, and that he was in an Indiana reformatory serving a term of 1 to 10 years. Warrants for his arrest were issued on June 15, 1962, and were filed with the officials at the Indiana reformatory. Indiana authorities advised that defendant would be released on March 6, 1963, by reason of the expiration of his sentence, and Rockford police took custody of defendant at that time and returned him to Rockford where he was confined continuously.

On April 8, 1963, separate indictments were returned charging the crimes above described, and upon arraignment defendant entered pleas of not guilty. Trials were set for April 15, 1963, in both cases. However, on the latter date, defendant filed a motion in each case alleging that he had been deprived of his constitutional right to a speedy trial, and that he was entitled to discharge under the then four-month rule within four months from March 6, 1962, the date of his Indiana commitment. Defendant's motions

were denied on May 14, 1963, and both cases were set for trial on May 20, 1963. He contends in this court, first, that the denial of the motions was contrary to the absolute mandate of the statute, and second that, regardless of the statute, the denials were in violation of his constitutional right to a speedy trial.

The right of discharge conferred by the statute is not absolute in the sense that the mere lapse of time ousts the court of jurisdiction. (*People* v. *Bagato,* 27 Ill.2d 165, 168.) The statute on its face has reference only to delay in the trial of the criminal offense for which the "commitment" was made, and necessarily contemplates that the accused remained within the judicial power of our courts during the period of delay. (See: *People* v. *Hayes,* 23 Ill.2d 527; *People* v. *Tamborski,* 415 Ill. 466.) This court has consistently held to the view that confinement on another charge tolled the four-month period in which an accused was required to be tried. (See: *People* v. *Franzone,* 359 Ill. 391; *People* v. *Lukoszus,* 242 Ill. 101.) And although, as we held in *People* v. *Swartz,* 21 Ill.2d 277, the rule of the latter cases was overcome in 1957 with the enactment of "An Act to bar certain actions for want of prosecution," (Laws of 1957, p. 1898,) this statute likewise did not entitle him to discharge. It only extends the advantage of the four-month rule to an accused who "has entered upon a term of imprisonment in any penitentiary *of this State,* and whenever during the continuance of the term of imprisonment there is *pending in the county in which he was sentenced any other indictment or information* against the prisoner, * * *." (Ill. Rev. Stat. 1961, chap. 38, par. 633.1; emphasis added.) Here, defendant was confined in an Indiana penal institution, and his commitment there had no reference to his Illinois crimes.

We conclude that neither of the Illinois statutes had application or entitled defendant to discharge. There remains, however, the claim of defendant that the delay in

bringing him to trial was nonetheless so "arbitrary and oppressive," (see: *People* v. *Farley,* 408 Ill. 288, 293,) as to offend the constitution, a contention which is founded upon our opinion in *People* v. *Bryarly,* 23 Ill.2d 313.

While there were other complicating factors, the *Bryarly* case presented the situation where delay in the trial of the accused for an Illinois crime was occasioned by his subsequent arrest, conviction and confinement in an Ohio penitentiary for a term of 1 to 15 years. Trial in Illinois was not commenced until some eight years after the indictment had been returned against the accused, and about five years after Illinois authorities had learned of his confinement in the Ohio penitentiary. We there held that he had been deprived of his constitutional right to a speedy trial and that he was entitled to discharge, the *ratio decidendi* being that the Uniform Criminal Extradition Act, (Ill. Rev. Stat. 1959, chap. 60, pars. 18-49,) which was in effect both in Illinois and Ohio, indirectly implemented the constitutional guaranty of a speedy trial, and that it should have been utilized by the People to bring about a prompt trial.

At all times pertinent in this case, the Uniform Criminal Extradition Act was in effect in both Indiana and Illinois and defendant urges that the result in *Bryarly* must obtain here. However, the failure to utilize the act in this case did not, under the facts, result in a delay that was arbitrary and oppressive. As contrasted with the five-year delay in *Bryarly,* there was in the present case but a ten-month delay from June 15, 1962, the date Illinois officials learned of defendant's whereabouts and took steps to obtain his custody, until April 15, 1963, the date defendant filed his motions for discharge and asserted his constitutional right, and there was a delay of slightly less than nine months from June 20, 1962, the date Illinois authorities were informed that the Indiana imprisonment would terminate on March 6, 1963, and the date he was returned to this State. When we consider the time which might have been consumed

by extradition processes, together with the impracticability of transferring defendant back and forth between Illinois and Indiana when his sentence in the latter State had so short a time to run, we do not consider that the failure to utilize the extradition procedures was unreasonable or that it resulted in arbitrary or oppressive delay in trial.

There are still other factual differences which serve to distinguish *Bryarly* but we think it unnecessary to go into them. The Illinois authorities moved to secure custody of defendant once his whereabouts became known, and at no time slackened or abandoned their efforts to bring him to trial for his Illinois crimes. We cannot say on this record that the delay in trial was so arbitrary or oppressive as to have deprived defendant of his right to a speedy trial. Accordingly, the trial court did not err in denying these motions for discharge.

Defendant was not tried under the Sunquist indictment until July 15, 1963, and in that case, on July 10, 1963, he filed a second motion for discharge, the theory of which was that our statute required that he be tried within four months of March 6, 1963, the date he was returned to Illinois and confined in jail. The rule that where an accused causes delay in trial by his own actions the four months period is renewed from the date of the delay is not applicable to motions for discharge. (*People* v. *Tamborski*, 415 Ill. 466.) Under the statute, however, trial may be delayed upon application of the People for as long as sixty days beyond the four-month period if such delay is occasioned by the prosecution's reasonable efforts to secure evidence. (Ill. Rev. Stat. 1961, chap. 38, par. 748.) Here, the Sunquist trial was set for June 24, 1963, but, before a jury was selected, it was continued on motion of the People when it appeared that the prosecuting witness, Hattie Sunquist, had left the city on vacation and was not available as a witness. The ensuing delay was thus reasonable and within the period permitted by the statute, and the second

motion for discharge was properly denied. As we pointed out in *Tamborski*, the circumstance that the People's motion was oral and informal is of no consequence.

Turning to the Wescott indictment, which charged the crime of attempted armed robbery, defendant renews here a claim made unsuccessfully below, *viz.*, that the indictment was void and in contravention of his constitutional right to know and demand the nature of the accusation against him, (Const. of 1870, art. II, sec. 9,) because it did not affirmatively allege that defendant had failed to commit the crime of armed robbery itself, or that he had been intercepted or prevented from doing so. No applicable or persuasive authority has been cited for this proposition. The purpose of the constitutional provision relied upon is to secure to an accused such a specific description of the offense charged against him as will enable him to fully prepare his defense, and to plead the judgment in bar of subsequent prosecution for the same offense. (*People* v. *Beeftink,* 21 Ill.2d 282; *People* v. *Peters,* 10 Ill.2d 577.) In this case the indictment charged that defendant "did * * * *attempt* to rob, * * * being then and there armed with a * * * gun." (Emphasis added.) The term "attempt" within itself signifies a failure, or an unsuccessful action, and thus the crime was fully described and defendant fully informed, without the need for the affirmative allegations for which he now contends. As a practical matter, the record reflects that defendant was not surprised or uncertain as to the charge but defended against it with certainty and particularity.

A contention is advanced in each case that the evidence was insufficient to prove defendant's guilt beyond a reasonable doubt and, in connection therewith, we see no purpose in detailing the evidence adduced other than to say that witnesses for the prosecution identified defendant as the man who had robbed Hattie Sunquist, and as the person who attempted an armed robbery of Wescott. For the defense, defendant denied the offenses, stating that he had

been at home with his wife at the time of the Wescott crime, and that he had moved to Indianapolis, Indiana, in June, 1961, and was living there when the Sunquist robbery occurred. In support of his testimony, defendant's sister testified that he had moved from Rockford to Indianapolis in June, 1961, and his wife testified he had not left Indianapolis on September 23, 1961, the day Hattie Sunquist was robbed. The issue in each case, therefore, was largely one of the credibility of the witnesses. And while the choice rested with the jury, defendant was entitled to have that choice made only on the basis of competent evidence and without the exertion of improper influence by the court.

Even the most casual reading of the Sunquist record discloses that the trial judge abandoned his role of an impartial arbiter, and assumed the role of prosecutor and jury to an extreme degree. Each time a witness identified defendant as the man they had seen in the Sunquist store, the court took over the questioning and emphasized the identification. In one instance when the prosecutor faltered on direct examination of the complaining witness, the court intervened and asked the critical question; in several instances while defense counsel was cross-examining witnesses, the court of its own volition supplied objections to the questions asked. When defense counsel sought to object to the court's undue participation and to patently improper restrictions placed upon cross-examination, he was rebuked by the court in language from which the jury could not help but know that the court thought little of counsel and of the merits of the defense. The whole improper performance was climaxed when defendant's wife was called as a witness for the defense. After the witness had testified that she and her husband had moved to Indianapolis in June, 1961, that he was employed at a garage there, and that she remembered September 23, 1961, the court suddenly inquired of defense counsel: "Have you talked to her about the penalties of lying?" When counsel

objected and moved for a mistrial, the court responded: "I am not going to declare a mistrial. I have a right to protect the State and the defendant and it is my duty to do it." Questioning of the witness was resumed and after she had testified that her husband had been in Indianapolis all day on the date of the robbery, the court said to her: "You know what the penalty for lying is, don't you?" In short, the court assumed the jury's function of deciding the credibility of the witness.

The entire record shows that the actions of the court severely and constantly prejudiced defendant in the eyes of the jury, and it requires neither extended discussion nor analysis to arrive at the conclusion that, in the Sunquist case, defendant was denied the fair and impartial trial to which he was entitled, thus necessitating a new trial. *Cf. People* v. *Tyner,* 30 Ill.2d 101; *People* v. *Santucci,* 24 Ill.2d 93; *People* v. *Finn,* 17 Ill.2d 614; *People* v. *Thomas,* 15 Ill.2d 344; *People* v. *Coli,* 2 Ill.2d 186; *People* v. *Marino,* 414 Ill. 445; *Marzen* v. *People,* 173 Ill. 43.

During the trial under the Wescott indictment, the court again took it upon himself to emphasize defendant's identification by the complaining witness, and likewise provided cues for the prosecutor to object. He did, however, exercise greater restraint in concealing his personal views and feelings from the jury. And while his undue participation in the case is a factor in our conclusion that defendant must be tried again under this indictment, the greatest error of this trial was the admission of incompetent evidence.

In its case in chief the prosecution presented two witnesses. The first was Wescott, who identified defendant as the armed man who had attempted to rob him, while the second was Donald Wright, a Rockford police officer, whose only testimony was that he had a conversation with Marilyn Moriarity, defendant's wife, on June 10, 1962.

Defendant's motion to strike Wright's testimony was denied. For the defense, defendant was the single witness, his testimony being that he was at home with his wife on the night of the crime. The prosecution called defendant's wife as a witness in rebuttal and after a few questions, the court, on its own motion, made her a court's witness. Thereafter, a police officer was called to impeach her testimony.

The practice of the court's calling a witness at the request of the prosecution in a criminal case was first enunciated in *Carle* v. *People,* 200 Ill. 494, where the court approved the calling of an eyewitness to a crime for whose veracity the State's Attorney could not vouch. It was later stated in *People* v. *Cardinelli,* 297 Ill. 116, that the purpose of the practice was to prevent a miscarriage of justice by having an eyewitness to a crime, for whose veracity neither party will vouch, fail to testify. And while subsequent decisions have held that the practice is not limited to the calling of eyewitnesses, (*People* v. *Touhy,* 361 Ill. 332, 350; *People* v. *Siciliano,* 4 Ill.2d 581, 590,) every decision which has touched upon the subject has counseled that the practice should be sparingly used and restricted to cases where it is shown there might otherwise be a miscarriage of justice. (*People* v. *Johnson,* 333 Ill. 469; *People* v. *Laster,* 413 Ill. 224; *People* v. *Bennett,* 413 Ill. 601; *People* v. *Robinson,* 14 Ill.2d 325). Further, as indicated in *People* v. *Siciliano,* 4 Ill.2d 581, 590, a proper foundation must be laid for the calling of a court's witness, which would necessarily consist of the reasons why the party desiring the witness cannot vouch for his veracity, and showing that the testimony of the witness will relate to direct issues and is necessary to prevent a miscarriage of justice. See also: *People* v. *Touhy,* 361 Ill. 332, 349; *People* v. *Johnson,* 333 Ill. 469, 473.

There was no foundation here. The trial court, without a request by the prosecution and entirely of its own volition, summarily and arbitrarily made defendant's wife a court's

witness. It is apparent that this was done to provide an avenue for the hearsay testimony of the police officer. It was error to make the wife a court's witness.

Additional errors have been alleged in each case but since they are not of such nature as will recur on new trials they will not be considered. For the reasons stated, the judgments of the circuit court of Winnebago County are reversed, and the causes are remanded for new trials.

*Reversed and remanded.*