(No. 85265

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEROY LADD, Appellee.

*Opinion filed February 19, 1999.—Rehearing denied March 29, 1999.*

604

RATHJE, J., took no part.
HARRISON, J., specially concurring.

James E. Ryan, Attorney General, of Springfield, and Robert B. Haida, State's Attorney, of Belleville (Barbara A. Preiner and Joel D. Bertocchi, Solicitors General, William L. Browers and Domenica A. Osterberger, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Michelle A. Zalisko, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Leroy Ladd, was convicted of armed violence and aggravated battery after a jury trial in the circuit court of St. Clair County. The trial judge sentenced the defendant to concurrent sentences of 12 years' imprisonment on the armed violence conviction and 4 years' imprisonment on the aggravated battery conviction. The appellate court reversed the defendant's convictions, concluding that the defendant had been denied his statutory right to a speedy trial. 294 Ill. App. 3d 928. We allowed the State's petition for leave to appeal (166 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The following chronology is relevant to this appeal. The defendant was taken into custody on April 9, 1995, and he continuously remained in custody through the time of trial. Defense counsel moved to dismiss the charges against the defendant on June 26, 1995. The defendant filed a *pro se* motion seeking the same relief the next day. Both motions alleged that the defendant was in custody for more than 30 days before a grand jury indicted him, in violation of section 109—3.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/109—3.1 (West 1996)). At a status appearance on June 29, a hearing on the motions was scheduled for July 12, 1995. Nothing occurred on that date, however, and the motions were not disposed of until October 16, 1995, when the court denied them.

While the dismissal motions were pending, the defendant filed, on August 14, 1995, a *pro se* motion seeking his discharge under the speedy-trial statute, section 103—5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(a) (West 1996)). Defense counsel filed a

similar motion for discharge a day later, on August 15. The motions alleged that the defendant had by then been in custody for more than 120 days, in violation of the speedy-trial statute. The judge heard arguments on the motions on August 15, and the judge allowed the defense until August 25 to present additional authority in support of the defendant's position. The judge denied the speedy-trial motions on September 15, 1995. In a written order, the judge explained that the motions to dismiss filed by the defense in June tolled the speedy-trial clock and that the period would remain suspended until the motions were eventually disposed of. As we have noted, the judge denied the motions to dismiss the charges on October 16, 1995. The defendant's trial began the next day, on October 17. A jury found the defendant guilty of armed violence and aggravated battery but not guilty of attempted murder. The defendant received concurrent sentences of 12 years' and 4 years' imprisonment for the two convictions.

The defendant appealed, and the appellate court concluded that the defendant's speedy-trial rights had been violated. 294 Ill. App. 3d 928. The appellate court disagreed with the trial judge's conclusion that the speedy-trial clock remained tolled while the defendant's dismissal motions were pending. The appellate court believed that the speedy-trial period resumed running after the July 12 hearing date, even though the motions remained unresolved at that time. The appellate court also determined that the defendant's motions for discharge under the speedy-trial statute, though they were premature when they were filed, ripened into meritorious ones while the trial judge had them under advisement. The appellate court therefore held that the defendant was entitled to discharge on speedy-trial grounds. We allowed the State's petition for leave to appeal (166 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The present appeal involves two questions regarding the defendant's pretrial custody and the calculation of time preceding trial. First, we must determine the amount of the delay attributable to the defendant for the defense motions to dismiss the charges. If we conclude that the defendant is not chargeable with the entire period preceding their eventual denial, we must then determine whether the defendant's motions for discharge under the speedy-trial statute, which were premature when they were filed, could ripen into meritorious motions while they were under advisement by the trial judge.

A defendant possesses both statutory (725 ILCS 5/103—5 (West 1996)) and constitutional (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) rights to a speedy trial. These rights are not necessarily coextensive. *People v. Garrett*, 136 Ill. 2d 318, 323 (1990); *People v. Jones*, 104 Ill. 2d 268, 286 (1984). The statute receives a liberal construction, designed to effectuate its purpose, though each case must be decided on its own facts. *People v. Beyah*, 67 Ill. 2d 423, 427 (1977); *People v. Fosdick*, 36 Ill. 2d 524, 528-29 (1967).

Section 103—5(a) provides:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103—5(a) (West 1996).

The appropriate remedy for a violation of the speedy-trial provision of section 103—5(a) is dismissal of the charges. Section 103—5(d) provides:

"Every person not tried in accordance with subsections (a), (b) and (c) of this Section shall be discharged from custody or released from the obligations of his bail or recognizance." 725 ILCS 5/103—5(d) (West 1996).

The speedy-trial statute does not specify how time is to be calculated. Section 1.11 of the Statute on Statutes, however, provides, "The time within which any act

provided by law is to be done shall be computed by excluding the first day and including the last ***." 5 ILCS 70/1.11 (West 1996). Applying section 1.11, the appellate court has excluded the first day and included the last day of any relevant period for purposes of calculating time periods under the speedy-trial act. See *People v. Grant*, 104 Ill. App. 3d 183, 188 (1982); *People v. Solheim*, 54 Ill. App. 3d 379, 386 (1977); *People v. Walton*, 110 Ill. App. 2d 115, 118 (1969). We have consistently employed the same method in the past (see, *e.g., People v. Kliner*, 185 Ill. 2d 81 (1998)), and do so here.

We must first determine how much, if any, delay is attributable to the defendant's motions to dismiss the charges, filed June 26 and 27, 1995. The State contends that the entire period from June 26, when the first one was filed, to October 16, when the motions were denied, must be charged to the defendant. A defendant is generally charged with delay caused by defense motions, and the defendant is responsible for calling up defense motions for hearing and disposition. *People v. Jones*, 104 Ill. 2d 268, 278-79 (1984); *People v. Terry*, 61 Ill. 2d 593, 595-96 (1975). We agree with the appellate court, however, that the general rule attributing delay to the defense is not applicable here. In the present case, apparently no one appeared at the July 12, 1995, setting for the defendant's dismissal motions. There is no explanation in the record for the inaction on that date, though a later hearing sheds some light on the matter. The transcript of the hearing conducted on August 15 on the defendant's motions for discharge reveals that the assistant State's Attorney assigned to the case was apparently on vacation at that time in July.

Whether delay should be attributed to the defense depends on whether the defendant's actions in fact caused or contributed to a delay. *People v. Donalson*, 64 Ill. 2d 536, 541 (1976). As this court explained in *People v. Fosdick*, 36 Ill. 2d 524, 528-29 (1967):

"In determining this question, the criterion in each case is whether the defendant's acts in fact caused or contributed to the delay. In the varied fact situations that involve the 120-day rule, we have carefully examined the facts to prevent a 'mockery of justice' either by technical evasion of the right to speedy trial by the State, or by a discharge of a defendant by a delay in fact caused by him. [Citation.]"

In the present case, nothing shows how the defendant's motions delayed proceedings in any way past the July 12 hearing date. Moreover, delay will not be attributable to the defendant from a silent record. *People v. Turner*, 128 Ill. 2d 540, 553 (1989); *People v. Reimolds*, 92 Ill. 2d 101, 106 (1982). For these reasons, we decline to attribute delay after the original July 12 setting to the defendant. We note that the June dismissal motions filed by defense counsel and the defendant *pro se* were simple and uncomplicated and did not require extensive preparation by the State. The twin motions were ultimately disposed of following a very brief argument by the prosecutor at a hearing on October 16, 1995, on the eve of trial. At that time, the prosecutor explained that the defendant had received a timely preliminary hearing and, moreover, that dismissal of the charges was not the appropriate remedy even if a violation of the statute had occurred.

The question also arises whether the period of delay occasioned by the defendant's dismissal motions properly began on June 26, when the first motion was filed, or on June 29, when the July hearing was scheduled. We need not determine who must take responsibility for this three-day period, however. As we explain below, the trial judge's eventual ruling on the defendant's discharge motions came more than three days after the motions had ripened into meritorious ones, so the three-day difference can have no bearing on our ultimate disposition here.

We must next determine whether the defendant's

motions for discharge under the speedy-trial statute, which were premature when they were made, could ripen into meritorious motions while the trial judge had them under advisement. The defendant filed a motion for discharge under the speedy-trial statute on August 14, contending that the speedy-trial period had already run. By that time, the defendant had been in custody for more than 120 days, and the defendant asserted that the earlier motions to dismiss the charges did not result in any delay chargeable to him. The defendant therefore contended that he was entitled to be discharged under the speedy-trial statute. As we have explained, however, the earlier motions did produce at least some delay attributable to the defense. The defendant's motions for discharge were therefore premature, having been filed less than 120 days following the time the defendant was placed in custody, after deducting the period that begins either June 26 or June 29 and ends July 12.

At the August 15 hearing on the defendant's motions for discharge, the judge granted the defendant additional time, until August 25, to submit cases in support of his position. The judge issued a ruling on the motions on September 15, when he denied them. In a brief written order, the judge cited the defendant's pending motions for dismissal of the charges, filed in June, and the judge concluded that the speedy-trial clock did not run while the earlier motions were pending.

As we have noted, we disagree with the trial judge's conclusion that the speedy-trial clock did not resume running after the July 12 hearing date. By the time the trial judge ruled on the motion, the defendant had been in custody longer than 120 days, and we must determine what portions, if any, of the period after the speedy-trial motion was filed may be included or excluded from the speedy-trial clock.

The State argues that a premature motion may never

ripen into a meritorious one and that we must always exclude the time in which the motion for discharge remains pending. Opposing that result, the defendant contends that the period in which a motion for discharge under the speedy-trial act is pending may never be chargeable to the defense. In support of the contention that no delay involved in the consideration or resolution of a speedy-trial motion may be attributed to the defense, the defendant cites this court's decisions in *People v. Tamborski*, 415 Ill. 466, 473 (1953), and *People v. Moriarity*, 33 Ill. 2d 606, 611 (1966). In *Tamborski*, this court stated that the time in which a motion seeking discharge for a speedy-trial violation is pending may not be attributed to the defense. In *Moriarity*, this court in *dictum* repeated *Tamborski*'s declaration. The State urges us to overrule or disregard those earlier statements, while the defendant contends that they should be reaffirmed.

We do not agree with the defendant that time involved in the resolution of a speedy-trial motion may never be attributed to the defense. The court in *Tamborski* discussed the effect in that case of a defendant's prior motion for discharge, and the court concluded that it had not actually resulted in any delay attributable to the defendant. The court explained:

"It has long been settled that where a prisoner obtains a continuance or in any way, by his own action, causes a delay in his trial, he is not entitled to discharge. We are unable to agree, however, that the motion for discharge on July 25, 1951, was such an act as would delay the trial. Defendant did not seek thereby to delay his trial—he sought discharge. Nor does the fact that the trial court did not immediately hear his motion and later took it under advisement tend to show that the trial was delayed by any act on the part of defendant. The fact that both the first and third motions were heard and decided on the date they were presented shows that such a motion does not involve a delay in trial. In fact, after the third motion was disposed of, the court proceeded to trial on the same day." *Tamborski*, 415 Ill. at 472-73.

We do not interpret the preceding passage from *Tamborski* as establishing a rigid rule that would preclude a court from attributing delay to the defense for a discharge motion under the speedy-trial statute. The present case illustrates well why some periods of delay in resolving motions for discharge under the speedy-trial statute may be chargeable to the defense. At the August 15 hearing on the speedy-trial motions, defense counsel requested additional time to respond to the cases cited by the State. Under the defendant's theory, however, even this period of delay could not be attributed to the defense. We disagree. To accept the defendant's theory would mean that a defendant could purposely delay the proceedings so that the motion would become ripe while the delay was occurring. As the court below explained, "Defendant cannot pursue inaction on his discharge motion, gain the court's agreement to refrain from action, and subsequently raise *Tamborski* to assign the resulting delay to the State." 294 Ill. App. 3d at 938. Moreover, we note that, under the law in effect when *Tamborski* and *Moriarity* were decided, the consequence of a delay attributable to the defense was to begin a new speedy-trial period when the delay ended, and not simply to resume the running of the previous period. See *People v. Donalson*, 64 Ill. 2d 536, 540 (1976). Attributing delay to a defendant's premature motion for discharge would therefore have produced a particularly harsh result.

Although we have determined that at least a portion of the time required to dispose of a motion for discharge may be attributed to the defense, we are not prepared to adopt the State's view and conclude that all the time used to dispose of a discharge motion must be charged to the defendant. The appellate court below agreed that the period of delay from August 15 to August 25, requested by defense counsel, should be chargeable to the defendant. The appellate court declined to attribute any pe-

riod after that to the defendant, however. Like the appellate court panel in this case, other panels of the appellate court have also concluded that neither the prosecution nor the defense must automatically bear all the time attributed to the resolution and disposition of a defendant's motion seeking discharge under the speedy-trial statute. See *People v. Andrade*, 279 Ill. App. 3d 292, 298-300 (1996) (in considering which party is responsible for time necessary for disposing of speedy-trial motion, court "must look to the timeliness of the motion, the complexity of the motion, whether the facts necessary to decide the motion are readily available, and the length of the continuance"); *People v. Medina*, 239 Ill. App. 3d 871, 877-78 (1993).

We agree with the appellate court in this case that the defendant is not responsible for the entire period of time following the August 15-25 continuance he requested. The trial court did not dispose of the defendant's discharge motions until September 15, when the written order denying them was filed. By that time, the defendant had been in custody 132 days, after deducting two periods of delay chargeable to the defense: from June 26 to July 12, and from August 14 (the date the defendant filed his *pro se* speedy-trial motion) to August 25. The appellate court below stated, "After August 25, 1995, defendant sought immediate discharge and awaited decision. His further stay in the St. Clair County jail does nothing to delay decision. The only conceivable act of delay was the tender of the question for decision. After August 25, 1995, defendant did nothing to actually delay trial." 294 Ill. App. 3d at 938. We agree, and we believe that the defendant was entitled to be released at that time.

As a final matter, we note that the speedy-trial statute, section 103—5, has recently been amended. The legislature added a sentence to section 103—5(a), which

now concludes, "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." Pub. Act 90—705, eff. January 1, 1999. The parties do not suggest that the new statute applies to the present case, and we express no opinion on the operation or effect of the new provision.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE RATHJE took no part in the consideration or decision of this case.

JUSTICE HARRISON, specially concurring:

I agree with the result reached by the majority: defendant is entitled to discharge on speedy-trial grounds. I write separately because I do not agree with my colleagues' interpretation of *People v. Tamborski*, 415 Ill. 466 (1953), and *People v. Moriarity*, 33 Ill. 2d 606 (1966). In my view, those cases mean precisely what they say: delays attendant to the filing and disposition of a motion for discharge on speedy-trial grounds are not attributable to the defendant. See *Moriarity*, 33 Ill. 2d at 611.

Contrary to the majority, I do not believe that this rule should be subject to exceptions. Speedy-trial rights are not self-executing. In order to avail himself of the protection of our state's speedy-trial statute, a defendant must make application for discharge. *People v. Shields*, 58 Ill. 2d 202, 210 (1974). Because the filing of a discharge motion is necessary to assert speedy-trial rights, it is anomalous to hold that the prosecution of such a motion creates delay for which the defendant is responsible. Defendants bring discharge motions because they want to terminate the proceedings, not protract them. *Tamborski*, 415 Ill. at 473.

The majority worries that a defendant might attempt

to subvert the system by filing a discharge motion prematurely, then deliberately delay resolution of the matter so that the speedy-trial clock will run out while the discharge motion is still pending. Such a concern, however, seems more theoretical than real. Motions to discharge do not require elaborate evidentiary hearings. They can and should be resolved promptly by the court. In a normal case, the trial court should have no need to grant the defendant anything more than the briefest of continuances. That being so, it is difficult to see where the opportunities for abuse lie. Of course, there is always the possibility that the trial court may be dilatory in resolving the matter once it is presented. That, however, is the fault of the court, not of the defendant.

In any event, there is certainly no evidence that the defendant was attempting to manipulate the speedy-trial law in this case, and the majority has cited no other instances in which such abuse has occurred or is alleged to have occurred. If a defendant does in fact, attempt such abuse one day, that is when we should take the matter up. Sound jurisprudential considerations counsel against attempting to resolve a problem before we are certain that the problem really exists.