# Illinois Official Reports

## Appellate Court

---

### *People v. Pettis*, 2017 IL App (4th) 151006

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KEVIN P. PETTIS, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-15-1006 |
| Filed | May 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 13-CF-1092; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and John M. Zimmerman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Michael J. Pelletier, Jacqueline L. Bullard, and Mariah K. Shaver, of State Appellate Defender's Office, of Springfield, for appellee. |
| Panel | JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.<br>Justices Steigmann and Appleton concurred in the judgment and opinion. |

# OPINION

¶ 1    In November 2015, defendant, Kevin P. Pettis, filed a third motion for discharge, alleging a speedy-trial violation. The State, in turn, asserted it had not exceeded the time in which to bring defendant to trial, arguing it had a total of 240 days: (1) the initial 120 days (725 ILCS 5/103-5(a) (West 2012)) plus (2) 120 additional days for the purpose of collecting deoxyribonucleic acid (DNA) testing results (725 ILCS 5/103-5(c) (West 2012)). The trial court granted defendant's motion, and the State filed a certificate of impairment.

¶ 2    The State appeals, asserting the trial court erred by granting defendant's third motion for discharge. We reverse and remand for further proceedings.

## I. BACKGROUND

¶ 4    Because this appeal centers on the issue of a speedy-trial violation, we outline only those facts necessary to resolve this appeal.

¶ 5    On July 7, 2013, defendant was arrested and later charged with (1) armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)), (2) aggravated unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2012)), and (3) reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2012)). Defendant remained in custody throughout these proceedings. On July 8, 2013, the State filed a motion to compel defendant to submit a DNA sample, which the trial court granted on July 15, 2013.

¶ 6    On September 4, 2013, the State filed a motion for a continuance pursuant to section 103-5(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(c) (West 2012)), requesting 120 additional days for the Illinois State Police crime laboratory (lab) to complete its processing of defendant's DNA. In its motion, the State asserted it had exercised due diligence in securing defendant's DNA and transporting it to the lab for processing, but the lab had not yet completed its processing. On September 9, 2013, the trial court granted the motion to continue over defendant's objection, finding the State had exercised due diligence in obtaining the DNA results. The case was thereafter continued for a pretrial conference on September 24, 2013.

¶ 7    On September 24, 2013, the State filed a second motion to continue, also pursuant to section 103-5(c) of the Code. The trial court, over defendant's objection, granted the motion after finding the State exercised due diligence and scheduled the case for a pretrial conference on October 22, 2013.

¶ 8    In the meantime, on October 16, 2013, the lab completed its testing and submitted the results for peer review. If anyone from the State's Attorney's office had inquired about the progress of the testing, a lab technician would have disclosed that the testing had been completed and was pending peer review. At the State's request, the lab technician would have attempted to secure the peer-reviewed results on the same day.

¶ 9    On October 22, 2013, the State filed its third motion to continue, again under section 103-5(c) of the Code. The motion does not contain any mention that testing had been completed pending peer review. The same day, the trial court again found the State exercised due diligence and granted the motion over defendant's objection. On October 27, 2013, the lab completed its peer review and it mailed the results to the State on October 28, 2013.

¶ 10 On November 19, 2013, defendant filed a motion to continue pursuant to section 114-4 of the Code (725 ILCS 5/114-4 (West 2012)), requesting more time to consult with counsel and to await the results of an independent investigation, which the trial court granted. Thereafter, on December 5, 2013, defendant filed two motions: (1) a motion to quash arrest and suppress evidence and (2) a motion to suppress evidence pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (*Franks* motion). On February 14, 2014, the court granted defendant's motion to suppress evidence; however, the *Franks* motion remained pending. The parties then agreed to schedule the case for a pretrial conference on February 18, 2014.

¶ 11 At the February 18, 2014, pretrial conference, defendant announced ready for trial, and the trial court scheduled the trial for March 3, 2014. On March 3, 2014, rather than proceeding to trial, the State filed a certificate of impairment and appealed the court's February 14, 2014, ruling on the motion to suppress evidence. This court reversed the trial court's decision and remanded for further proceedings. See *People v. Pettis*, 2015 IL App (4th) 140176, 32 N.E.3d 744. The mandate from this court was issued on July 23, 2015.

¶ 12 Following the July 23, 2015, issuance of the appellate court mandate, on August 11, 2015, the trial court, on its own motion and without the parties present, scheduled the case for a pretrial conference on September 15, 2015. On September 15, 2015, defendant requested a hearing date on the pending *Franks* motion, which the court scheduled for September 22, 2015. Following the hearing, the court took the matter under advisement and scheduled no further court dates. On October 2, 2015, the court entered a written order denying defendant's motion and thereafter scheduled the case for a pretrial conference on October 20, 2015.

¶ 13 On October 20, 2015, the parties scheduled the case for trial on November 2, 2015, the first day of the next trial term. However, on November 2, 2015, the State moved to continue after electing to try an unrelated case. Over defendant's objection, the trial court granted the motion to continue and scheduled the case for trial on November 4, 2015. On November 4, 2015, the State filed a motion to continue pursuant to section 114-4(c)(2) of the Code (725 ILCS 5/114-4(c)(2) (West 2014)) due to witness unavailability. The court granted the motion over defendant's objection and rescheduled the trial for November 16, 2015.

¶ 14 On November 9, 2015, defendant filed his third motion for discharge, citing a speedy-trial violation. Following a November 16, 2015, hearing, the trial court granted defendant's motion for discharge. The court determined, once the DNA evidence became available, the State could no longer draw from the additional 120 days granted by the court for the purpose of obtaining DNA testing results. The court found the State's request for a continuance under section 114-4 of the Code from November 4, 2015, until November 16, 2015, resulted in a violation of defendant's statutory speedy-trial rights. The court noted the State could have extended the speedy-trial time by filing their motion under section 103-5(c) of the Code, but the motion filed pursuant to section 114-4(c)(2) did not extend the statutory speedy-trial period. Moreover, the State did not orally represent its intention of seeking an extension pursuant to section 103-5(c) or provide the necessary evidence for the court to make a finding of due diligence that would permit the State an extension of the speedy-trial term.

¶ 15 The State filed a certificate of impairment, and this appeal followed.

¶ 16 II. ANALYSIS

¶ 17 On appeal, the State asserts the trial court erred by granting defendant's third motion for discharge for a speedy-trial violation. In evaluating speedy-trial issues, we consider two

- 3 -

standards of review. "The trial court's determination as to who is responsible for a delay of the trial is entitled to much deference, and should be sustained absent a clear showing that the trial court abused its discretion." *People v. Kliner*, 185 Ill. 2d 81, 115, 705 N.E.2d 850, 869 (1998). For example, the abuse-of-discretion standard would apply where the court determines whether defendant agreed to, caused, or objected to a delay. See *id.* However, the ultimate question as to whether defendant's statutory right to a speedy trial has been violated is a question of law subject to *de novo* review. *People v. McGee*, 2015 IL App (1st) 130367, ¶ 25, 44 N.E.3d 510.

¶ 18    In examining this speedy-trial issue, we begin our analysis by calculating the dates that are not attributable to defendant.

¶ 19                                A. Calculating Dates

¶ 20    The State contends it is responsible for 162 days of delay, whereas defendant asserts 249 days are attributable to the State. The following dates are pertinent to our calculation of the speedy-trial term. We note, for calculating the number of days in each time period, we exclude the first date and include the last date. See *People v. Ladd*, 185 Ill. 2d 602, 608, 708 N.E.2d 359, 362 (1999) (in calculating the speedy-trial period, the court must exclude the first day and include the last day).

¶ 21                        1. *July 7, 2013, Through November 19, 2013*

¶ 22    The parties agree these dates are attributable to the State, as any continuances were granted upon the State's request and over defendant's objection. See *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 77, 14 N.E.3d 555 (a delay is not attributable to a defendant unless that defendant caused or contributed to the delay). Accordingly, we calculate 135 days are attributable to the State during this period.

¶ 23                        2. *November 19, 2013, Through February 18, 2014*

¶ 24    The parties agree these dates are attributable to defendant, as the delays arose from defendant's requests for continuances and for hearings on his motion to quash arrest and suppress evidence. 725 ILCS 5/103-5(a) (West 2012).

¶ 25                        3. *February 18, 2014, Through March 3, 2014*

¶ 26    At a pretrial conference on February 18, 2014, which followed the trial court's decision to grant defendant's motion to suppress evidence, the parties scheduled defendant's trial for the next available setting—March 3, 2014. Defendant argues this delay is attributable to the State because he demanded trial. The State, on the other hand, points out defendant still had a pending *Franks* motion, and therefore, it asserts any delay should be attributable to defendant as long as that motion remained open. See *People v. Jones*, 104 Ill. 2d 268, 277, 472 N.E.2d 455, 459 (1984). The State did not provide us with a transcript of this particular proceeding, but the docket entry provided as part of the record indicates defendant moved to schedule the matter for trial.

¶ 27    Generally, a delay between the filing of a motion to suppress evidence and the trial court issuing its order on this motion is attributable to the defendant. *Id.* However, in *People v. Terry*, 61 Ill. 2d 593, 596, 338 N.E.2d 162, 164 (1975), the supreme court held where a

defendant demands trial, it is a signal the defendant has abandoned the motion in favor of proceeding to trial. "Whether delay should be attributed to the defense depends on whether the defendant's actions in fact caused or contributed to a delay." *Ladd*, 185 Ill. 2d at 608, 708 N.E.2d at 362.

¶ 28    Although defendant relies heavily on the exception carved out by *Terry*, the *Terry* case involved an unusual set of circumstances that are not present in the case at bar. In *Terry*, the defendant filed numerous pretrial motions that went unheard throughout the course of the case. *Terry*, 61 Ill. 2d at 595, 338 N.E.2d at 163. After 99 days, the defendant filed a demand for trial and, after the expiration of the speedy-trial period, he filed a motion for discharge, which the trial court subsequently granted. *Id.* On appeal, the supreme court acknowledged the general rule that the defendant is charged with the delay occasioned by the filing of his pretrial motions. *Id.* at 595, 338 N.E.2d at 164. However, the court noted the need for an exception to the general rule based on the circumstances in *Terry* because, in the 99-day period preceding the defendant's demand for trial, the State repeatedly ignored court orders to respond to the defendant's motions and set the matter for trial. *Id.* Thus, when the defendant filed his demand for trial, an action inconsistent with an intention to have his pending motions answered, the State should have recognized the defendant's intention to abandon those pretrial motions. *Id.* at 596, 338 N.E.2d at 164.

¶ 29    *Terry* is distinguishable from the present case. Here, defendant had a *Franks* motion pending at the time he announced ready for trial. Although the defendant in *Terry* also had pending motions, the lengthy delay—more than 250 days—between the filing of those motions and the motion for discharge clearly indicated the defendant's intention of abandoning those motions. Such is not the case here. Defendant sought a hearing on the *Franks* motion until the trial court issued a dispositive ruling on his other motion to suppress evidence. He then immediately sought a trial but did not move to withdraw the *Franks* motion; rather, the motion was scheduled for a hearing after this court remanded the case for further proceedings. In this matter, the State did not cause any delay related to defendant's *Franks* motion.

¶ 30    Taking these facts into consideration, we see no reason to apply the unusual exception created by *Terry* and, instead, apply the general rule set forth in *Jones*. Accordingly, we conclude this period of time, where defendant had the *Franks* motion pending, is attributable to defendant.

¶ 31                        4. *March 3, 2014, Through July 23, 2015*

¶ 32    During this period of time, the case was on an interlocutory appeal. The parties agree the period of time the case was on appeal is attributable to defendant (Ill. S. Ct. R. 604(a)(4) (eff. Feb. 6, 2013)).

¶ 33                        5. *July 23, 2015, Through September 15, 2015*

¶ 34    This court issued its mandate on July 23, 2015, and on August 11, 2015, the trial court scheduled the case for a pretrial conference on September 15, 2015. The State argues there is no transcript of this hearing to determine whether defendant agreed to schedule the case for a pretrial conference. However, the docket indicates the court scheduled the matter for a pretrial conference without the parties present, which means defendant had no opportunity to agree or object to the date scheduled by the court.

¶ 35    Regardless, the State next asserts defendant's *Franks* motion remained pending, making any delay attributable to defendant. *Jones*, 104 Ill. 2d at 277, 472 N.E.2d at 459. As noted above, we agree. We therefore conclude this period of time is attributable to defendant.

¶ 36                    6. *September 15, 2015, Through October 2, 2015*

¶ 37    At the September 15, 2015, pretrial, defendant requested a hearing on the *Franks* motion, for which the trial court entered a written order on October 2, 2015. Because defendant occasioned this delay, we attribute this time period to defendant. 725 ILCS 5/103-5(a) (West 2012).

¶ 38                    7. *October 2, 2015, Through October 20, 2015*

¶ 39    Defendant asserts the period from October 2, 2015, through October 20, 2015, should be attributable to the State because the trial court scheduled the matter for pretrial on its own motion after issuing its ruling on the *Franks* motion to suppress. See *Kliner*, 185 Ill. 2d at 119, 705 N.E.2d at 871 (a delay occasioned by the court's schedule and where the defendant is given no choice is not attributable to the defendant). The State contends this time period should be attributed to defendant because the delay resulted from the court's ruling on defendant's *Franks* motion. We agree with the State.

¶ 40    The trial court issued its written order on October 2, 2015, then scheduled the case for a pretrial conference on October 20, 2015, for the parties to schedule a trial date. In *Kliner*, the case relied upon by defendant, the trial court, on its own motion, rescheduled the defendant's trial date due to the court's unavailability on the previously scheduled day. *Id.* at 119-20, 705 N.E.2d at 871. Thus, the defendant in *Kliner* in no way contributed to or caused the delay. Such is not the case here. Rather, the delay—the court scheduling the case for a pretrial conference after issuing its written order—resulted from defendant's *Franks* motion and, accordingly, is attributable to defendant.

¶ 41                    8. *October 20, 2015, Through November 4, 2015*

¶ 42    The parties agree the period from October 20, 2015, through November 4, 2015, is attributable to the State based on the State's motions to continue. This period consists of 15 days attributable to the State.

¶ 43                    9. *November 4, 2015, Through November 16, 2015*

¶ 44    The State concedes these days are attributable to the State because its motion to continue pursuant to section 114-4(c)(2) of the Code does not toll or extend the speedy-trial date. *People v. Toolate*, 62 Ill. App. 3d 895, 899, 379 N.E.2d 927, 929 (1978). Thus, these 12 days are attributable to the State.

¶ 45    In considering all of the aforementioned calculations, we conclude 162 days are attributable to the State. We now examine whether the State violated defendant's right to a speedy trial.

¶ 46                    B. Extension of the Speedy-Trial Deadline

¶ 47    The State asserts the trial court's September 9, 2013, order extending the speedy-trial term an additional 120 days provided the State with a total of 240 days to bring defendant to trial.

Defendant, on the other hand, argues the State had only 120 days from September 9, 2013, to bring him to trial.

¶ 48    Generally, under section 103-5(a) of the Code, "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he [or she] was taken into custody." 725 ILCS 5/103-5(a) (West 2012). However, "[i]f the [trial] court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days." 725 ILCS 5/103-5(c) (West 2012). Where the court grants the State additional time to procure DNA testing results under section 103-5(c), the State interprets these provisions as granting the State a cumulative period of 240 days to bring a defendant to trial.

¶ 49    In *People v. Johnson*, 323 Ill. App. 3d 284, 751 N.E.2d 621 (2001), this court addressed the calculation of the speedy-trial period after the State has moved for a continuance under section 103-5(c). In *Johnson*, the State filed a motion to continue pursuant to section 103-5(c) of the Code approximately one month after defendant's arrest, requesting an additional 120 days to procure DNA testing results. *Id.* at 286, 751 N.E.2d at 623. The defendant later filed a motion for discharge based on the violation of his speedy-trial rights, which the trial court denied. *Id.*

¶ 50    This court affirmed the trial court, concluding, "section 103-5(c) allows the trial court to continue cases involving DNA testing for a maximum of 120 days beyond the initial 120-day period provided in section 103-5(a), for a total maximum period of 240 days, without violating a defendant's speedy-trial rights." *Id.* at 289, 751 N.E.2d at 625. This court went on to note, "section 103-5(c) makes it incumbent upon the State to apply for such a continuance, and the length of any extension up to the maximum necessarily depends upon the State's request." *Id.* In so finding, we rejected the defendant's argument that the additional 120 days granted under section 103-5(c) began running on the date of the trial court's order. *Id.* In *People v. Colson*, 339 Ill. App. 3d 1039, 1041, 791 N.E.2d 650, 651 (2003), we reiterated that the trial court's decision to grant 120 additional days for procuring DNA testing results under section 103-5(c) resulted in the State having 240 days to bring the defendant to trial.

¶ 51    Here, like in *Johnson*, the State filed its motion to continue pursuant to section 103-5(c) early in the initial 120-day speedy-trial period and requested an additional 120 days to procure DNA testing results, which the trial court granted after finding the State had acted with due diligence. Defendant argues the holding in *Johnson* does not entitle the State to an additional 120 days, but the length of the delay depends on the State's request. We agree the holding in *Johnson* does not require the trial court to grant the State an additional 120 days; however, in this case, like in *Johnson*, the State requested 120 days, and the court granted that request.

¶ 52    Defendant also asserts *Johnson* did not address whether the State demonstrated sufficient diligence that would entitle it to a 120-day extension. However, section 103-5(c) requires only that the court find: (1) the State has exercised, without success, due diligence to obtain DNA results; (2) the DNA evidence is material to the case; and (3) there are reasonable grounds to believe that such evidence may be obtained at a later day. 725 ILCS 5/103-5(c) (West 2012). Under defendant's analysis, once the State obtained the DNA evidence, the remainder of the additional 120 days granted pursuant to section 103-5(c) should be rescinded. We decline to adopt this approach.

¶ 53        Defendant relies on *Colson*, 339 Ill. App. 3d 1039, 791 N.E.2d 650, to support his argument. In *Colson*, the State requested and received a 120-day extension of the speedy-trial period pursuant to section 103-5(c) for the purpose of obtaining DNA evidence. *Id.* at 1041, 791 N.E.2d at 651. However, the DNA evidence became available on day 114 of the initial 120-day speedy-trial period. *Id.* at 1046, 791 N.E.2d at 655. On the date of the defendant's trial, 135 days after his arrest, the defendant filed a motion for discharge for a violation of his speedy-trial rights, which the trial court subsequently denied. *Id.*

¶ 54        On appeal, the defendant asserted the trial court abused its discretion when it found the State exercised due diligence in obtaining the DNA results where the State delayed nearly three months before submitting evidence to the crime laboratory for testing. *Id.* This court affirmed, concluding the trial court did not abuse its discretion by finding the State had exercised due diligence. *Id.* at 1048, 791 N.E.2d at 657.

¶ 55        The *Colson* court specifically rejected the Fifth District's approach in *People v. Battles*, 311 Ill. App. 3d 991, 999, 724 N.E.2d 997, 1003 (2000), of requiring the State to take certain steps to prove its due diligence, such as explaining its attempts to procure the DNA at the earliest possible date or its efforts to expedite the testing. Rather, *Colson* adopted a broader approach of examining due diligence on a case-by-case basis. *Colson*, 339 Ill. App. 3d at 1047-48, 791 N.E.2d at 656. Like the present case, in *Colson*, the DNA results were obtained within the initial 120-day period. That fact did not change this court's assessment of the State's due diligence.

¶ 56        Defendant relies on *People v. Garrett*, 104 Ill. App. 3d 178, 180, 432 N.E.2d 1305, 1307 (1982), for the assertion that the State was required to demonstrate "due diligence to obtain the missing evidence or that there was any prospect of obtaining the evidence *at a later date* if the time period for trial were *extended.*" (Emphases added.) However, that statement is *dicta* and has nothing to do with the analysis of the case. Rather, the issue in *Garrett* was whether the trial court properly considered the State's motion to continue to be a request pursuant to section 103-5(c), an issue not present in the case at bar.

¶ 57        Based on the trial court's September 9, 2013, order granting the State an additional 120 days pursuant to section 103-5(c), we conclude the State was entitled to 240 total days to bring defendant to trial. Therefore, because only 162 days of delay are attributable to the State, we conclude the trial court erred in granting defendant's motion for discharge.

¶ 58                                    C. Best Practices

¶ 59        In this case, the State filed its motion seeking an additional 120 days in September 2013, long before the expiration of the initial speedy-trial period. The trial court found the State exercised due diligence in its attempts to procure the evidence by that date, granted the motion to extend the speedy-trial deadline for an additional 120 days, and scheduled the case for a series of reviews to determine the status of the DNA evidence. Although we find no apparent abuse in this case, procedurally, this approach may allow the State to delay a case for a period significantly longer than necessary to procure the DNA evidence. For example, here, where the DNA evidence was available prior to the expiration of the initial speedy-trial period, the court's ruling permitted the State to delay up to an additional 120 days for the purpose of obtaining testing results it had already received.

¶ 60        A better practice would be to avoid granting the entire 120 days unless the circumstances strongly suggest such an extension is necessary. Periodic review dates as utilized in this case,

coupled with an order extending the speedy-trial period for a portion of the 120 days, would help to ensure only the time actually needed is given. If the State is unable to obtain the test results within the initial extension, the court, upon the request of the State, may grant additional extensions up to the 120 days allowed by the statute. Additionally, defendants should not hesitate to request that, if the court is inclined to grant a continuance, it do so for a period of less than 120 days. In making these suggestions, we do not intend to obligate the trial court to proceed as we have proposed.

¶ 61                                              III. CONCLUSION

¶ 62         For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

¶ 63         Reversed and remanded.