**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200420-U

Order filed November 17, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0420 Circuit No. 18-CF-492 |
| | ) | |
| THEO CHESTER, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justices Daugherity and Holdridge concurred in the judgment.

**ORDER**

¶ 1        *Held*:  (1) Defendant's statutory speedy trial rights were not violated; (2) defendant's constitutional speedy trial rights were not violated; (3) defense counsel was not ineffective; and (4) the circuit court did not err when it did not appoint independent counsel to represent defendant during a preliminary *Krankel* hearing.

¶ 2        Defendant, Theo Chester, appeals following his conviction for second degree murder. He argues his statutory and constitutional speedy trial rights were violated, he received ineffective assistance of trial counsel, and the Kankakee County circuit court failed to conduct a proper *Krankel* hearing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Police arrested defendant on August 20, 2018, for the murder of his brother, George

Chester. 720 ILCS 5/9-2 (West 2018). Defendant appeared in court on August 22, 2018, and the

matter was continued to September 11, 2018, for arraignment. Defendant remained in custody.

The court docket attributes the continuance to defendant.

¶ 5        At arraignment, the court continued the case to October 18, 2018. The State also stated

that discovery would be available to defense counsel within 21 days, and the court asked defense

counsel if he would like a status hearing on discovery 30 to 40 days from then, which counsel

stated would be fine. The court stated the continuance would be on defendant's motion. The case

was later continued to November 15, 2018, by agreement, and then to January 10, 2019, on

defendant's motion.

¶ 6        On January 10, 2019, the court noted that there was a speedy trial demand and set the

case for trial on March 4, 2019. On March 1, 2019, defendant appeared in court for final pretrial.

On that date, the State filed a motion for a continuance. The State noted that defendant was ready

to proceed, but defense counsel would agree to a 60-day continuance. Defendant objected to the

continuance, stating that he wanted to proceed to trial and that he did not understand why the

case should be continued. The court granted the State's motion for a continuance over

defendant's objection. The court docket noted that the continuance was by agreement.

¶ 7        The next court date was on May 7, 2019. The State tendered further discovery to the

defense, and the court set the case for trial for August 26, 2019. While the court transcripts are

silent as to who the continuance is attributable to, the clerk's docket shows that the continuance

was on defendant's motion.

¶ 8        The parties returned to court for a status hearing on July 8, 2019. Defense counsel stated that he had not yet complied with Rule 413 disclosures but would within the next 14 days. The case returned to court on August 23, 2019, for final pretrial. Defense counsel filed his Rule 413 disclosures *instanter*. On the date of trial, August 26, 2019, the State filed a motion to continue because of the late disclosure of three witnesses it wished to investigate. Over defendant's objection, the court granted the State's motion. The court continued the case for trial on October 28, 2019. On that date, defendant had been in custody for a total of 434 days.

¶ 9        At trial, testimony established that defendant, George, and George's girlfriend lived together. Defendant and George engaged in an argument the night George died. Defendant left the house after the fight, and George's girlfriend found him on the kitchen floor with a stab wound. George died from his injuries.

¶ 10        Police later found defendant with two individuals walking away from the house. Officers found and collected the knife used to stab George, a bloodstain on the pant leg of Anthony Romano-Boyd, and blood on defendant.

¶ 11        Dr. Michael Humilier testified as the State's expert in forensic pathology. Humilier testified regarding his examination of George, as well as the autopsy and toxicology reports. He reported that George died of a stab wound to his chest. Based on the toxicology report, George had signs of PCP and marijuana in his blood. The reference comments in the toxicology report indicated that George was not within the range of phencyclidine (PCP) where a user would experience agitation and combativeness. Defense counsel objected to the admittance of the autopsy and toxicology reports into evidence. The court overruled the objection and admitted the reports pursuant to section 115-5.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-5.1 (West 2018)).

¶ 12        On cross examination, defense counsel questioned Humilier regarding his knowledge of the drugs listed on the toxicology report. Humilier testified that he did not perform the testing, and he did not have any further knowledge of the drugs other than what was in the report. The court found that Humilier was not an expert qualified to provide opinions on the effects of drugs, and this line of questioning ended. Defendant did not present an expert to the jury to contradict or otherwise discredit Humilier's testimony.

¶ 13        Defendant testified that he stabbed George in self-defense. He explained that George was on top of him, and defendant reached for a knife and "poked" George with it so he would move. On cross-examination, the State played clips of defendant's videorecorded interview with the police to highlight the contradiction between defendant's testimony and statement to the police on the night of the incident.

¶ 14        During the jury instruction conference, defense counsel submitted a jury instruction for self-defense, but did not tender Illinois Pattern Jury Instructions, Criminal, No. 4.13 (approved July 18, 2014) (hereinafter IPI Criminal No. 4.13) regarding the definition of reasonable belief. Additionally, the court asked whether the parties wanted the jury to be sent back with any exhibits, and defense counsel stated they could wait to see what the jury wanted before sending anything to them.

¶ 15        During closing arguments, trial counsel argued that defendant acted in self-defense. He argued that George had "stuff" in his system that made his behavior "a little off." Counsel argued that the "stuff" found in George's body at the time of his death caused him to act a little more violently that night, creating a situation that required defendant to defend himself. Counsel also stressed that none of the State's witnesses saw defendant and George fighting, and therefore, no one knew exactly what happened and how defendant came to stab George.

4

¶ 16        The jury found defendant guilty of second degree murder. At the sentencing hearing, defendant stated defense counsel was ineffective. The court asked defendant to write down his complaints and set the matter for a *Krankel* hearing. See generally *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 17        During the *Krankel* hearing, defendant argued that counsel did not visit him, did not tell him about the blood evidence on Romano-Boyd's pant leg, did not interview witnesses regarding the events leading up to his fight with George and of his self-defense theory, and did not bring up the drugs found in George's body during closing arguments. The court asked defense counsel to respond to the allegations against him. Defense counsel stated that he did speak to the necessary witnesses and that he told defendant about the State's evidence prior to trial. The court found that there was no basis for appointing new counsel to pursue any claims against defense counsel and that he was not ineffective. The court subsequently sentenced defendant to 12 years' imprisonment. Defendant appeals.

¶ 18                                II. ANALYSIS

¶ 19                                A. Speedy Trial

¶ 20        Defendant argues that trial counsel was ineffective for failing to move for a statutory or constitutional speedy trial dismissal. In support, defendant contends the circuit court erred in attributing delays to defendant for speedy trial purposes and that trial counsel was ineffective for failing to object to continuances that created a speedy trial violation.

¶ 21        To prevail on an ineffective assistance of counsel claim, defendant must show that: (1) counsel's performance was deficient, and (2) but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Defendant's ineffective assistance claim derives from an alleged speedy trial violation. Counsel's

5

failure to assert a speedy trial violation cannot establish either prong of an ineffective assistance claim if there is no basis for raising a speedy trial objection. *People v. Cordell*, 223 Ill. 2d 380, 385 (2006). Accordingly, we must first determine whether defendant's right to a speedy trial was violated. The circuit court's determination of whether a constitutional or statutory speedy trial right has been violated is reviewed *de novo*. *People v. Crane*, 195 Ill. 2d 42, 52 (2001).

¶ 22                                1. Statutory Right to a Speedy Trial

¶ 23        A defendant has a statutory right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5(a) (West 2018). Section 103-5(a) of the Code states, in pertinent part,

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant. *** Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2018).

"[S]ection 103-5(a) places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed." *Cordell*, 223 Ill. 2d at 391. If a defendant does not object to the delay of his trial, the delay is considered agreed to by defendant. *Id.* To invoke speedy trial rights, defendant must make a clear objection and demand for trial. *Id.* Any delays where defendant's act caused or contributed to the delay will be calculated against defendant, and the speedy trial time will be tolled. *People v. Mayo*, 198 Ill. 2d 530, 537 (2002). The court's decision as to the accountability for a delay will be upheld absent an abuse of discretion. *People v. Reimolds*, 92 Ill. 2d 101, 107 (1982).

6

¶ 24    Here, defendant was taken into custody on August 20, 2018. The speedy trial clock began on August 21, 2018. See *People v. Pettis*, 2017 IL App (4ᵗʰ) 151006, ¶ 20 (in calculating the speedy trial period, we exclude the first day and include the last day). Defendant next appeared in court on August 22, 2018. These two days are attributable to the State. See *Mayo*, 198 Ill. 2d at 536 (holding that the statutory period begins to run automatically from the day defendant is taken into custody, even without a formal demand).

¶ 25    Defendant argues the time frame of August 22 to September 11, 2018, as being attributable to the State instead of defendant, but provides no argument as to why we should attribute it to the State. From our review of the record, this delay is attributable to the defendant, as defendant did not object to the continuance.

¶ 26    The main delay at issue in this case is the continuance on March 1 to May 7, 2019. On March 1, when defense counsel did not object to the State's motion to continue the trial, defendant affirmatively objected and stated that he did not agree to continuing his case. Defendant further stated on the record that he wanted to go to trial. "[W]here a defendant does not promptly repudiate an attorney's unauthorized act upon receiving knowledge of the same, the defendant effectively ratifies the act." *People v. Hall*, 194 Ill. 2d 305, 328-29 (2000). Defendant's objection caused the 63-day continuance to the next court date to be attributable to the State, which is not properly accounted for in the circuit court docket.

¶ 27    The continuances from May 7 to August 26, 2019, are shown by the court docket to be attributable to defendant, and there is nothing in the record to contradict this designation. Moreover, even if we accept defendant's argument that he did not ask for a continuance, we note that the *Cordell* court held that if a defendant does not object or affirmatively assert a speedy trial demand on the record after a delay is proposed, such defendant acquiesces to the delay and

7

the speedy trial period tolls. See *Cordell*, 223 Ill. 2d at 391-92. Defendant did not object or affirmatively assert his speedy trial demand on the record during the status hearings during this time. Therefore, the delay was at the very least by agreement, and the speedy trial period tolled.

¶ 28    Defendant also raises the time frame between August 26 and October 28, 2019. The State asked for a continuance on August 26, 2019, due to the need to investigate defendant's witnesses that had been disclosed three days prior to the trial date. Even when defendant does not request or agree to a continuance, the court may still attribute a delay to defendant if he or she is the cause of the delay. See *People v. Cross*, 2021 IL App (4th) 190114, ¶ 99. In this instance, the delay was caused by defendant when certain witnesses were disclosed only three days prior to trial, giving the State little time to properly investigate. It is not an abuse of discretion for the court to attribute the delay to defendant here, because of his late disclosure of discovery. See *id.*

¶ 29    In sum, though 434 days passed from the time defendant was arrested and he proceeded to trial, only 89 days may be attributable to the State, well under the 120-day statutory speedy trial limit. Defense counsel was not ineffective for failing to move for a statutory speedy trial dismissal because no violation occurred.

¶ 30                                    2. Constitutional Right to a Speedy Trial

¶ 31    A criminal defendant also has a constitutional right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. In determining whether the constitutional right has been violated, no specific time period is used. *Barker v. Wingo*, 407 U.S. 514, 523 (1972). There are four factors to consider when evaluating a constitutional speedy trial claim: (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion to the right to a speedy trial; and (4) the prejudice caused. *People v. Campa*, 217 Ill. 2d 243, 250 (2005). All factors must be

considered together to determine whether the right to a speedy trial has been violated. *Barker*, 407 U.S. at 533.

¶ 32    We find that while defendant clearly asserted his right to a speedy trial, that assertion does not result in a violation of his constitutional right to a speedy trial when the other three factors clearly do not support defendant's arguments. First, defendant was tried and convicted of second degree murder, and only 434 days passed between the date of arrest and the commencement of trial. Considering the seriousness of the charge and the complexity of the evidence, we find that a less than two-year delay is not unreasonable. See *id.* at 530-31 (finding that longer delays may be tolerated for a serious and complex charge rather than an ordinary charge with less preparation required).

¶ 33    The State's reasons for requesting delays are also reasonable in this case. The State had two primary requests for continuances, to finalize forensic testing and to investigate witnesses that defendant had disclosed only three days prior to trial. These were not attempts to delay a trial to hamper the defense, but valid reasons that justify the delays. See *id.*

¶ 34    Finally, while a defendant is certainly prejudiced by delays when he is incarcerated while awaiting trial, the prejudice in this case was minimal. The record does not indicate that there was any evidence lost due to the delay, nor were there any witnesses who could no longer testify due to death or lapses in memory. The delay did not affect defendant's ability to present his defense at trial. We therefore find, after weighing all factors, that defendant's constitutional speedy trial right was not violated, and defense counsel was not ineffective for his decision not to raise the issue.

¶ 35                              B. Ineffective Assistance of Counsel

¶ 36        Defendant raises several other ineffective assistance of counsel claims, including that

defense counsel failed to: (1) file a motion *in limine*, (2) object to the State's questioning of

certain witnesses, (3) engage in meaningful cross-examination against Humilier or to retain an

expert for the defense regarding the effects of the drugs found in George's body, (5) tender a jury

instruction regarding the definition of reasonableness, and (6) address George's drug use in

closing arguments. As set forth above, to prevail on an ineffective assistance claim, a defendant

must show that counsel rendered deficient performance and that the deficient performance

prejudiced the defendant. *Strickland*, 466 U.S. at 687. Prejudice is demonstrated where a

defendant shows that a reasonable probability exists that, but for the deficient performance, the

result of the trial would have been different. *People v. Enis*, 194 Ill. 2d 361, 376 (2000). "A

reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 669. Both prongs of the *Strickland* analysis must be proven; if a claim

fails under either prong, we need not determine whether the claim also fails under the other.

*People v. Graham*, 206 Ill. 2d 465, 476 (2003). Claims of ineffectiveness of counsel may be

rejected on prejudice grounds alone, "for lack of prejudice renders irrelevant the issue of

counsel's performance." *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 37        Actions that are considered matters of trial strategy are accorded great deference by the

court and "are generally immune from claims of ineffective assistance of counsel." *People v.*

*West*, 187 Ill. 2d 418, 432 (1999). A defendant is entitled to competent representation, not perfect

representation. *People v. Tucker*, 2017 IL App (5th) 130576, ¶ 26. "[E]ven if defense counsel

makes a mistake in trial strategy or tactics or an error in judgment, this will not render

representation constitutionally defective." *People v. Perry*, 224 Ill. 2d 312, 355 (2007). In such

10

cases where a defendant argues ineffective assistance due to mistakes in trial strategy, he must overcome the strong presumption that counsel's action constituted reasonable strategy. *People v. Clendenin*, 238 Ill. 2d 302, 317 (2010). A reviewing court evaluates counsel's conduct under the totality of the circumstances. *Tucker*, 2017 IL App (5th) 130576, ¶ 54.

¶ 38    Defendant challenges several specific instances of counsel's alleged failures. We evaluate each claim in turn.

¶ 39    First, defendant claims counsel was deficient for failing to file a motion *in limine* or to otherwise object to the admission of hearsay comments during Humilier's testimony regarding the effects of PCP in the reference comments of the toxicology report. However, section 115-5.1 of the Code provides that "pathologist's protocol, autopsy reports and toxicological reports, shall be public documents and thereby may be admissible as *prima facie* evidence of the facts, findings, opinions, diagnoses and conditions stated therein." 725 ILCS 5/115-5.1 (West 2018). The extent of Humilier's testimony outlined the drugs listed in the toxicology report and how this information aided him in performing George's autopsy. This information is clearly admissible under section 115-5.1. Further, defense counsel could not have provided deficient performance here, because he did in fact object to the admission of the report, and it was admitted over his objection. Defendant also cannot prove he was prejudiced by defense counsel's decision not to argue further or to file a motion *in limine* to argue the issue, because any further arguments would have failed.

¶ 40    Defendant next claims counsel should have retained an independent expert for trial to testify to the effects of the drugs found in George's body at the time of his death to further his argument that George was aggressive, and defendant was acting in self-defense. The decision of whether to call a witness is a matter of trial strategy that is left up to trial counsel. *West*, 187 Ill.

11

2d at 432. While another attorney may have retained an expert, defense counsel is not deficient simply because he chose not to do so. See *People v. Young*, 341 Ill. App. 3d 379, 383 (2003) (finding that another attorney's hindsight is not sufficient to show deficient performance).

¶ 41 Defendant also argues counsel did not engage in a meaningful cross-examination of Humilier. Specifically, defendant contends counsel should have questioned Humilier regarding the effects PCP, marijuana, and cocaine could have had on George's behavior. Defendant challenges the scope and manner of counsel's cross-examination, an area that falls under trial strategy and cannot sustain an ineffectiveness claim. See *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002) (decisions regarding what witnesses and evidence to present and the extent of cross-examination are matters of trial strategy that is generally unchallengeable); *People v. Williams*, 246 Ill. App. 3d 1025, 1035 (1993) ("any allegations of incompetency of counsel in regards to cross-examination are questions of trial strategy *** and, as such, are not subject to review by a reviewing court").

¶ 42 A review of the record shows that trial counsel effectively handled Humilier's cross-examination, and we cannot say that counsel's approach was objectively unreasonable. Extensive cross-examination could cause undue attention to unwanted aspects of a witness's testimony, and counsel is given substantial deference to exercise his professional judgment not to create negative attention to defendant's case. *People v. Holman*, 132 Ill. 2d 128, 163 (1989). Defense counsel questioned Humilier as to his knowledge of the drugs listed on the toxicology report, and Humilier testified that he did not perform the testing and was merely stating what was listed in the report. He repeatedly stated that he did not have any further knowledge of the drugs than what was in the report and that he only used the information to aid in the performance of the autopsy. Further, the court already determined that Humilier was not an expert qualified to

12

provide opinions on the effects of drugs on a person's behavior, making any questioning regarding that topic meaningless. While, in hindsight, defendant may contend that certain questions should have been asked or other tactics employed, we cannot say that counsel failed to conduct any meaningful questioning that rises to the level of ineffective assistance of counsel.

¶ 43        Moreover, even if we were to find deficient performance based on counsel's choice not to impeach Humilier or to retain an independent expert witness, defendant suffered no prejudice from that choice. In order to establish prejudice, defendant must show that there is a reasonable probability that the result of the trial would have differed if not for trial counsel's error. *Perry*, 224 Ill. 2d at 342. Defendant has not and cannot establish that failure to question Humilier regarding the effects of PCP in a person's blood would have resulted in a different outcome at trial when Humilier was not qualified to give such an opinion.

¶ 44        Next, defendant argues ineffective assistance where defense counsel did not object to the State's manner of cross-examination of defendant. Decisions regarding what to object to and when to do so are also matters of trial strategy and thus entitled to great deference. *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997). Because counsel may only be ineffective when his performance falls below the standards of reasonableness, counsel is not deficient for failing to object when an objection would be improper. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005). We find that defense counsel's decision not to object to the manner of cross-examination was a matter of trial strategy and did not rise to the level of constitutionally deficient performance. It is arguable that such an objection may result in the State reexamining defendant and drawing more attention to the inconsistencies in his statements. Though counsel's strategy was ultimately unsuccessful, a trial strategy that is unsuccessful does not constitute deficient performance. See *Perry*, 224 Ill. 2d at 355.

13

¶ 45    Defendant's argument that counsel was ineffective for failing to tender IPI Criminal No. 4.13, on the definition of reasonable belief, when it is an element of his self-defense claim also fails. The decision to omit the jury instruction is not so fundamental as to result in an unfair trial or prejudice when the jury is properly instructed on everything else. See *People v. Underwood*, 72 Ill. 2d 124, 130-31 (1978). The jury received all other instructions relating to the elements of self-defense, therefore, there was no error in not providing an instruction defining "reasonable belief."

¶ 46    Defendant's last ineffective assistance claim is that counsel should have more clearly argued at closing that the drugs found in George's body made him aggressive and necessitated defendant stabbing him in self-defense. Counsel argued that defendant acted in self-defense, but not solely because of the drugs George used. It is not unreasonable for an attorney to only attack one element of the State's case. *People v. Milton*, 354 Ill. App. 3d 283, 290 (2004). "[T]he choice of defense theory is ordinarily a matter of trial strategy, and counsel has the ultimate authority to decide this trial strategy." *People v. Guest*, 166 Ill. 2d 381, 394 (1995). In his closing argument, defense counsel chose to focus on the fact that the State's witnesses were not present during the fight and did not know how George was stabbed. Discussing the drugs found in George's body in detail was clearly a part of a defense theory that trial counsel decided not to pursue, and the failure to discuss it does not amount to deficient performance.

¶ 47    Finally, defendant claims that his trial counsel's errors cumulatively deprived him of a fair trial. To reverse for a new trial, the court must find that the errors are extreme in nature. *People v. Sims*, 2019 IL App (3d) 170417, ¶ 55. However, we have already found that none of the circuit court's findings regarding trial counsel's representation are manifestly erroneous.

Where, as here, the alleged errors do not amount to reversible error on any individual issues, there is no cumulative error. *People v. Howell*, 358 Ill. App. 3d 512, 526 (2005).

¶ 48                                C. Independent Counsel for *Krankel* Hearing

¶ 49        Defendant next argues that the circuit court erred by not appointing independent counsel at the conclusion of the *Krankel* hearing. He contends that the trial court incorrectly rejected his arguments that trial counsel was ineffective.

¶ 50        When a defendant raises, as a self-represented litigant, a posttrial ineffective assistance of counsel claim, the circuit court must conduct a preliminary *Krankel* inquiry into the claim's factual basis. *People v. Jolly*, 2014 IL 117142, ¶ 29. The purpose of a preliminary *Krankel* inquiry is to decide whether to appoint independent counsel to argue a defendant's ineffective assistance of counsel claims. *People v. Ayres*, 2017 IL 120071, ¶ 11. The procedure developed from our supreme court decision in *Krankel* and its progeny. See *Krankel*, 102 Ill. 2d at 181. When a defendant raises such a claim, the circuit court is to conduct an adequate inquiry into the factual basis of the claim. *People v. Jackson*, 2020 IL 124112, ¶¶ 95-97. Our supreme court has further clarified that newly appointed counsel is not automatically required in every case where a defendant presents a posttrial motion as a self-represented litigant alleging ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). If the court determines that the claim "lacks merit or pertains only to matters of strategy," it may dismiss defendant's claims without appointing new counsel. *Jackson*, 2020 IL 124112, ¶ 97. If the defendant's allegations show possible neglect of the case, new counsel should be appointed to represent the defendant in his or her claims of ineffective assistance of counsel. *Id.*

¶ 51        We review *de novo* whether the court conducted a proper *Krankel* hearing to determine if new counsel must be appointed. *People v. Robinson*, 2017 IL App (1st) 161595, ¶ 88. Where a

proper *Krankel* hearing was conducted, the court's finding that it was not necessary to appoint new counsel will not be disturbed on appeal unless it is manifestly erroneous. *People v. Haynes*, 331 Ill. App. 3d 482, 484 (2002).

¶ 52     We first note that defendant cites *People v. Roddis*, 2018 IL App (4th) 170605, ¶ 81, to support his argument that the circuit court erred by deciding the merits of defendant's ineffective assistance of counsel claim at the initial *Krankel* hearing. However, in January 2020, our supreme court reversed this decision, finding that, even during a preliminary *Krankel* hearing, it is necessary for the trial court to consider the merits before determining whether new counsel should be appointed. *People v. Roddis*, 2020 IL 124352, ¶ 61. Defendant's reliance on this case is therefore misplaced.

¶ 53     Here, the court held a hearing regarding defendant's allegations. During the hearing, the court provided defendant an opportunity to address his claims, heard defendant list each instance of alleged ineffective assistance, and relied on its own trial observations. The court therefore addressed the facts and circumstances surrounding defendant's claims of ineffective assistance. Consequently, we find the hearing constituted a proper preliminary inquiry under *Krankel*.

¶ 54     Having found that the court conducted a proper preliminary inquiry, the next question is whether the inquiry demonstrated possible neglect such that the appointment of new counsel is necessary. Defendant does not appear to have presented the court with any valid arguments on the claims. As noted above, we find defendant's claims against defense counsel lack merit, as they raised issues of trial strategy that "ultimately rest with trial counsel" and are "generally immune from claims of ineffective assistance of counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79. As we have found defendant did not receive ineffective assistance of counsel, we cannot say that the circuit court's finding was against the manifest weight of the evidence.

¶ 55                                    III. CONCLUSION

¶ 56            For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee

County.

¶ 57            Affirmed.