2025 IL App (4th) 250094-U

NO. 4-25-0094

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
October 30, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| JUAN MARTIN MERCADO, | ) | No. 22CF351 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Appellate counsel's motion to withdraw is granted and the trial court's judgment is
               affirmed.

¶ 2    Following a stipulated bench trial, defendant, Juan Martin Mercado, was found

guilty of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2022)) and sentenced to 10 years

in prison. Defendant appealed, and the Office of the State Appellate Defender (OSAD) was

appointed to represent him. OSAD has filed a motion to withdraw as appellate counsel, citing

*Anders v. California*, 386 U.S. 738 (1967), and alleging an appeal would be frivolous. We grant

OSAD's motion and affirm the trial court's judgment.

¶ 3                              I. BACKGROUND

¶ 4    On June 28, 2022, the State charged defendant by information with two counts of

criminal sexual assault (720 ILCS 5/11-1.20(a)(1), (a)(4) (West 2022)). The charges were based

on allegations that on February 11, 2022, defendant had sexual intercourse with I.M., his girlfriend's minor daughter, inside his vehicle at a hotel parking lot in Morton, Illinois, in Tazewell County. In count I, the State alleged that defendant used force in the commission of the offense (*id.* § 11-1.20(a)(1)). In count II, it alleged that at the time of the offense, defendant was 17 years of age or older and held a position of trust, authority, or supervision in relation to I.M., who was between the ages of 13 and 18 (*id.* § 11-1.20(a)(4)). On August 4, 2022, a grand jury indicted defendant on the same charges.

¶ 5　　　　While defendant's case was pending, he also faced a charge of criminal sexual assault (*id.*) in Peoria County case No. 22-CF-111. That charge was based on allegations that prior to the charged offense in the underlying case, defendant drove I.M. to a secluded location in Peoria, Illinois, and sexually assaulted her. The record reflects that on November 29, 2023, a Peoria County jury found defendant guilty of that offense and, on March 8, 2024, the trial court sentenced him to 10 years in prison.

¶ 6　　　　In the underlying proceedings, defendant was initially represented by attorney Jason Netzley. On August 11, 2022, Netzley appeared in court on defendant's behalf. He noted that defendant was in custody in Peoria County and requested a continuance, which the trial court granted. On August 18, 2022, Netzley appeared in court and stated that defendant had agreed to waive the 60-day period for arraignment. A written order entered the same day reflects the matter was continued by agreement of the parties and that defendant waived the "60[-]day arraignment requirement." On September 22, 2022, defendant was arraigned and the record indicates he appeared in court via Zoom. The matter was then continued several times by the agreement of the parties. In May 2023, Netzley was permitted to withdraw from his representation of defendant and attorney Myron Goldstin entered his appearance in the case on defendant's behalf.

¶ 7    From April to July 2023, while represented by either Netzley or Goldstin, defendant made a series of *pro se* filings, including (1) demands for trial, citing section 103-5(a) of the Code of Criminal Procedure of 1963 (Code), known as the speedy trial statute (725 ILCS 5/103-5(a) (West 2022)); (2) motions to dismiss "for time[l]iness violation," alleging he was not provided with a preliminary examination or an indictment within 30 days of the date he was taken into custody in violation of section 109-3.1(b) of the Code (*id.* § 109-3.1(b)); (3) a motion to suppress statements he made to the police, alleging that although he was informed of his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), "there was no translater [*sic*]" and he did not understand "what was being said"; and (4) motions for discharge based on an alleged statutory speedy trial violation.

¶ 8    During a hearing on August 17, 2023, defendant appeared in person before the trial court for the first time. Goldstin informed the court that defendant "no longer wanted [his] services." Defendant confirmed that he wanted to proceed *pro se* and "go to trial," and the court set the matter for a hearing on that issue. Noting that defendant had raised an allegation in his *pro se* motion that he did not understand English, the court also ordered a Spanish translator to appear at the hearing.

¶ 9    On August 24, 2023, the trial court conducted a hearing on defendant's request to proceed *pro se*. A Spanish translator appeared at the hearing, and the court also considered defendant's continued need for a translator. The record shows defendant reasserted his desire to represent himself, stating he had fired Goldstin because Goldstin requested a continuance and he wanted "to go to trial." Goldstin noted defendant's *pro se* filings, informed the court that he "had nothing to do with those motions," and denied adopting them. Ultimately, the court granted defendant's request, allowing Goldstin to withdraw from the case and defendant to proceed *pro se*.

¶ 10　　　　Regarding defendant's need for a translator, defendant acknowledged that he had prepared two of his *pro se* filings but asserted he "had help with the rest." Upon inquiry by the trial court, Goldstin stated that he had never had any issues "with [defendant] understanding English." He asserted that no interpreter was present for any of their conversations and that he had "no doubt" that he and defendant "completely understood each other." Although the court indicated it had doubts that defendant did not understand English, it ordered a Spanish translator to appear with defendant in court for all substantive hearings, including trial.

¶ 11　　　　The State then requested a continuance, asserting there were motions *in limine* it intended to file. After defendant indicated he also wanted a hearing on his *pro se* motions, the trial court set the matter for a motion hearing at the request of both parties, which it stated would toll the speedy trial period. Additionally, in discussing the speedy trial period, the State maintained that there were "zero days against speedy trial." It asserted that every continuance had been by agreement, defendant was being held on bond in his Peoria County case, and he had never been surrendered on bond in the underlying action. The State also argued that although an arrest warrant had been issued in the case, it was never executed.

¶ 12　　　　On August 28, 2023, the State filed motions *in limine* to (1) bar evidence regarding any sexual activity between the victim and anyone other than defendant pursuant to section 115-7 of the Code (725 ILCS 5/115-7 (West 2022)), (2) bar evidence or argument concerning defendant's alleged language barrier as it related to the voluntariness of his statements to the police, and (3) admit evidence of defendant's sexual assault of I.M. in Peoria County on February 11, 2022. With respect to that latter motion, the State asserted it intended to introduce testimony from I.M. and a police officer who investigated the Peoria County case. It alleged the evidence would show that on February 11, 2022, defendant drove I.M. in his vehicle to a secluded place in Peoria, where

he sexually assaulted her by forcefully placing his penis into her vagina. Defendant then "went to pick up food for his work crew before driving to a hotel parking lot in Morton, where the charged offense occurred."

¶ 13 On August 29, 2023, the trial court conducted a hearing on the parties' pending motions. Initially, the court inquired whether defendant wanted additional time to research and respond to the State's motions *in limine*. Defendant declined, asserting that he was ready to proceed.

¶ 14 The trial court next addressed defendant's motion to suppress his statements to the police. The State presented testimony from Jason Cabell, a detective with the Morton Police Department. Cabell stated that in February 2022, he interviewed defendant in connection with his alleged sexual assault of I.M. in Morton. The interview occurred at the Peoria County jail, where defendant was in custody for a different offense. Cabell and another detective were present for the interview. The door to the interview room was not locked and defendant was in handcuffs. Cabell denied that anyone yelled at defendant during the interview or that defendant was verbally or physically threatened.

¶ 15 Cabell further testified that defendant was bilingual and spoke both English and Spanish. Cabell conversed with defendant in English and stated that defendant never stated that he did not understand what Cabell was saying. Before the interview began, Cabell read defendant his *Miranda* rights. He also presented defendant with "a *Miranda* waiver form," and they discussed whether defendant could read, write, and understand English. According to Cabell, defendant asserted that "he could not read or write English, but he could understand it and spoke it." Cabell stated he confirmed with defendant that he understood English and asserted that defendant did not have any trouble speaking to him in English. After defendant informed Cabell that he did not read

or write the English language, Cabell read the waiver form to defendant twice to ensure that he understood. Defendant never indicated a lack of understanding and printed his name on the waiver form. Defendant answered Cabell's questions in English and gave appropriate answers.

¶ 16 Cabell further testified that in preparation for the hearing on defendant's motion to suppress, he was asked "to do some follow-up" regarding whether defendant spoke and understood English. He went to defendant's place of employment and spoke with a woman in human resources. The woman told him that defendant worked as a supervisor and that the employer had "an unwritten rule that [supervisors] speak English."

¶ 17 Finally, Cabell testified that his interview with defendant was video and audio recorded. A recording of the interview was admitted into evidence and published at the hearing. The State also presented the *Miranda* waiver form signed by defendant.

¶ 18 The trial court determined the State had made a *prima facie* case that defendant's statements to Cabell were voluntary. Defendant declined to present any evidence or argument, and the court denied his motion to suppress evidence. In so holding, the court noted that the recording of the interview showed defendant answered all questions appropriately, responsively, and in the correct context, and that he "did not indicate *** that he didn't understand any of the comments."

¶ 19 The trial court next considered defendant's request for discharge on speedy trial grounds and his motion to dismiss "for timeliness violation." Following argument by the parties, the court denied both motions. Regarding defendant's speedy trial claim, the court found defendant's bond had "never been surrendered and [he was] in the custody of Peoria [County]." It also noted that all the continuances in the underlying case were by the agreement of the parties. Additionally, although defendant *pro se* filed demands for trial citing the speedy trial statute, he did so while represented by counsel, who did not adopt defendant's *pro se* filings. Regarding

- 6 -

defendant's motion to dismiss "for timeliness violation," the court determined the motion had "no legal basis."

¶ 20　　　Last, the trial court addressed and granted each of the State's three motions *in limine*. With respect to the State's motion to admit evidence of defendant's charged conduct in his Peoria County case, the State argued that pursuant to section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2022)), the evidence could be admitted for "propensity purposes." It also noted that the act of sexual assault at issue in that case happened on the same day and "during the same course of conduct" as the charged offenses. Defendant offered no argument in response to the State. In granting the motion, the court found a high degree of factual similarity between defendant's Peoria County case and the charged offenses. It noted the "interwoven nature of the events" and determined that the prejudicial effect of the evidence did not substantially outweigh its probative value.

¶ 21　　　The trial court set the matter for a pretrial hearing on September 5, 2023, and for a jury trial on September 12, 2023. The court ordered defendant to "be transported in person from [the] Peoria County Jail" for the pretrial hearing and that he be "housed at [the] Tazewell County Jail until the conclusion of [his] jury trial."

¶ 22　　　Following the September 5, 2023, pretrial hearing, the matter was continued by agreement of the parties to September 8, 2023. At the September 8 hearing, the State informed the trial court about difficulties it had communicating with I.M. and her mother. In particular, the State asserted that it had been communicating with a woman believed to be I.M.'s mother but who turned out to be defendant's sister. Further investigation showed that I.M. and her mother had moved to the East Coast, and the State was working to arrange for them to travel back to Illinois, which was a matter complicated by their immigration status and lack of valid identifications.

¶ 23        On September 11, 2023, a Tazewell County arrest warrant was filed, showing it had been served on defendant on September 8, 2023.

¶ 24        On September 12, 2023, the State moved for a 60-day continuance based on its difficulty in procuring its material witness from out of state. Defendant objected and submitted the prior *pro se* demand for trial based on the speedy trial statute that he filed in April 2023, while represented by counsel. The trial court accepted defendant's filing as a written demand for speedy trial and stated it would "start the clock." It then found good cause for the continuance requested by the State and granted its motion over defendant's objection. The court set the matter for trial on November 13, 2023, and ordered defendant transported back to the Peoria County jail.

¶ 25        On September 29, 2023, defendant filed a notice of an interlocutory appeal from the trial court's August 29, 2023, order denying his motion for discharge on speedy trial grounds. He also filed another *pro se* motion seeking discharge on speedy trial grounds. On October 26, 2023, the parties appeared in court. The court continued the matter and vacated defendant's November 2023 trial date, finding it lacked jurisdiction to proceed due to defendant's appeal. The same month, attorney Bart Beals entered his appearance on defendant's behalf. Beals represented defendant throughout the remainder of the proceedings.

¶ 26        On December 18, 2023, the trial court entered a written order continuing the case by agreement of the parties to January 11, 2024. On December 21, 2023, this court granted defendant's motion to dismiss his appeal. See *People v. Mercado*, No. 4-23-970 (Dec. 21, 2023) (order allowing appellant's motion to dismiss appeal). On January 11, 2024, the parties appeared in court and agreed to continue the case until March 21, 2024, and to the tolling of the speedy-trial period.

¶ 27        On March 14, 2024, the trial court entered an order addressing the resolution of

defendant's Peoria County case, stating as follows: "The above [defendant], having been sentenced to [the Illinois Department of Corrections (DOC),] shall first be transported to [the Tazewell County jail], to be held on the above case. [Defendant] shall remain at [the Tazewell County jail] until conclusion of [the] above case."

¶ 28 At the March 21, 2024, hearing date, the trial court and the parties discussed the resolution of defendant's Peoria County case and the State noted defendant was currently "in custody of Tazewell County." Additionally, Beals adopted and filed defendant's September 2023 *pro se* motion for discharge on speedy-trial grounds. The record reflects the case was also continued by agreement of the parties. The case was similarly continued by agreement on April 25 and June 13, 2024, and on defendant's motion on October 3, 2024.

¶ 29 On October 17, 2024, the parties appeared in court. The State alerted the trial court that defendant's Spanish translator had reported that defendant "informed her that he in fact did not need an interpreter but wanted to cost the county thousands of dollars to have her sit there throughout trial." Ultimately, the matter was continued by agreement of the parties to December 13, 2024, when the court stated it would consider the "translator issue." On that next hearing date, the court entered an order continuing the matter on its own motion to December 20, 2024.

¶ 30 On December 20, 2024, the parties appeared in court. Defendant's translator, Maria Lopez, provided testimony that was consistent with the State's representations. Upon inquiry by the trial court, Beals indicated that he conversed with defendant in English. The prosecutor also represented that she had spoken to defendant during his period of self-representation and that the two spoke in English. The court determined that the appointment of a translator for defendant was no longer necessary and set the matter for trial on January 27, 2025.

¶ 31 On January 8, 2025, defendant filed a motion *in limine*, seeking to "dismiss the

instant case and/or bar [his] recorded testimony *** when he was in police custody." Defendant argued he would be denied his sixth amendment (U.S. Const., amend. VI) right to confront his accuser if I.M. did not testify at trial. The motion also stated that Beals adopted defendant's previously filed motions in the case "for purposes of making it clear on the record that [defendant did] not waive his arguments."

¶ 32 On January 9, 2025, the parties appeared in court for a pretrial hearing and the trial court entered an order continuing the case by the agreement of the parties to January 27, 2025, the scheduled trial date. On January 27, the parties appeared in court and defendant waived his right to a jury trial. Beals stated that the parties had agreed to a stipulated bench trial but that they were "not stipulating to *** guilt or innocence" and that defendant was not waiving any of his previously raised issues. Beals further indicated that defendant would raise "a Confrontation Clause argument." Also, "in exchange for the waiver and the stipulated bench trial," the State had agreed "to request a concurrent sentence to [defendant's] Peoria [County] case for 10 years" upon a finding of defendant's guilt.

¶ 33 The following day, January 28, 2025, the trial court conducted defendant's stipulated bench trial. Initially, the court addressed defendant's motion *in limine*. In connection with defendant's claim of a confrontation clause violation, Beals argued that defendant would not be stipulating to I.M.'s actual age. Further, he asserted that, to prove I.M.'s age without presenting a copy of her birth certificate, the State had to present testimony from I.M. or her mother stating the day I.M. was born. Counsel argued that without such testimony, defendant's right to confrontation was violated. The court denied defendant's motion to the extent it raised an alleged confrontation clause violation. It also determined that its rulings on defendant's previously litigated issues would stand.

¶ 34     With respect to defendant's trial, the State proceeded on only count II of defendant's indictment. According to the parties' stipulated facts, Adrian Aguilar, a detective with the Peoria Police Department, would testify that he investigated an alleged criminal sexual assault involving I.M., who was born in December 2007, and defendant, who was born in October 1991. During that investigation, I.M. reported to the police that she had been sexually assaulted by defendant at "multiple locations," including in Morton. Aguilar contacted the Morton Police Department and spoke with Detective Cabell. During investigations by both police departments, defendant was interviewed. He admitted to having sexual intercourse with I.M. in Peoria on February 11, 2022. He also admitted having "a parental relationship" with I.M., I.M. had his last name, I.M. called him " 'dad,' " and "he knew [I.M.'s] age." Aguilar would further testify that defendant was tried and convicted in Peoria County for his actions.

¶ 35     The stipulated facts further provided that Cabell would testify that he was contacted about an alleged criminal sexual assault involving I.M. and defendant. During his investigation, I.M.'s public school records were obtained and "confirm[ed]" that she was born in December 2007. Cabell would also testify that he watched I.M.'s Child Advocacy Center interview, during which she disclosed details about the alleged assault in Morton, including that the assault occurred in the back of defendant's vehicle, defendant penetrated her vagina with his penis, and defendant wore a condom that he discarded in the parking lot where his vehicle was parked. Cabell identified defendant's vehicle as a white GMC Yukon and believed, based on I.M.'s description, that the assault occurred in an "area behind the Days Inn and Quality Inn" in Morton. He contacted the general manager of the Quality Inn and obtained surveillance video of its parking lot from the day of the offense. The footage showed a white GMC Yukon entering the parking lot, parking in the back southwest corner of the lot, and having its lights turned off. The vehicle remained parked for

approximately six and a half minutes before the lights turned back on, the front driver's side door opened briefly, and the vehicle left the parking lot.

¶ 36        The parties stipulated that Cabell would testify that he visited the southwest corner of the parking lot at issue and located a discarded condom on the ground "at approximately the same location the white GMC Yukon was seen in the video." He collected the condom as evidence, and it was sent to the Illinois State Police (ISP) Crime Lab for DNA testing.

¶ 37        On February 22, 2022, Cabell interviewed defendant at the Peoria County jail. During the interview, defendant identified I.M.'s mother as his wife. He told Cabell that I.M. was 14 years old and identified her as his stepdaughter. Defendant stated that he brought I.M. and her mother to the United States from Mexico approximately 10 to 12 years earlier. He reported that he gave I.M. his last name and admitted that he was "like [I.M.'s] dad." Defendant also admitted to having sex with I.M. in both Peoria and Morton and that he discarded a used condom in the parking lot during the Morton incident.

¶ 38        Finally, the parties stipulated that Svetlana Gershburg would testify that she worked as a forensic scientist for the ISP Crime Lab and performed DNA testing on the suspected used condom. Swabbing from the outside of the condom "indicated two DNA contributors," one that was "150 septillion times more likely" to have originated from I.M. and one that was "160 sextillion times more likely" to have originated from defendant. Swabbing from inside the condom also "indicated two DNA contributors," one that was "240 times more likely" to have originated from I.M. and one that was "310 sextillion times more likely" to have originated from defendant.

¶ 39        Also admitted into evidence and considered by the trial court were exhibits that contained documents related to defendant's Peoria County conviction, the surveillance footage from the Quality Inn parking lot, the discarded condom, the recording of defendant's February 22,

2022, police interview, and Gershburg's laboratory report. During closing arguments, defendant maintained that the State had not proved I.M.'s age beyond a reasonable doubt, asserting that both defendant's statements and I.M.'s school records were insufficient to establish her age at the time of the offense. Defendant's counsel pointed out that defendant was not I.M.'s biological father and it was not known where I.M.'s school received its information regarding her age.

¶ 40       The trial court found defendant guilty of criminal sexual assault as charged in count II of the indictment. It sentenced defendant to 10 years in prison, to run concurrently with his 10-year sentence in his Peoria County case.

¶ 41       This appeal followed. As stated, OSAD was appointed to represent defendant on appeal. On July 21, 2025, it filed a motion to withdraw as appellate counsel and attached a memorandum of law in support, identifying issues that might arguably support an appeal but concluding they had no merit. Proof of service of the motion on defendant has been shown. Additionally, this court granted defendant leave to file a response to OSAD's motion, but he has not responded. After examining the record and executing our duties in accordance with *Anders*, we grant OSAD's motion and affirm the trial court's judgment.

¶ 42                                II. ANALYSIS

¶ 43       On review, OSAD has identified seven potential issues for review, including whether (1) the trial court erred by denying defendant's motion for discharge on speedy trial grounds, (2) defendant received a timely preliminary examination or indictment under section 109-3.1 of the Code (725 ILCS 5/109-3.1 (West 2022)), (3) the court erred in denying defendant's motion to suppress his confession, (4) the court erred in admitting other-crimes evidence, (5) defendant's confrontation clause rights were violated, (6) defendant was proven guilty beyond a reasonable doubt, and (7) defendant's stipulated bench trial was tantamount to a guilty plea,

requiring admonishments under Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). OSAD concludes that all issues lack arguable merit, and we agree.

¶ 44                                    A. Discharge on Speedy Trial Grounds

¶ 45         OSAD first argues that defendant has no viable argument that he was entitled to discharge on speedy trial grounds. We agree, although not on the same basis as asserted by OSAD.

¶ 46         Illinois defendants "possess both constitutional and statutory rights to a speedy trial." *People v. Hartfield*, 2022 IL 126729, ¶ 32. "Although Illinois's speedy trial statutes implement the constitutional right, the statutory and constitutional rights are not coextensive." *Id.* Below, defendant challenged only his statutory right to a speedy trial.

¶ 47         Three principal statutes address speedy trial rights. *People v. Wooddell*, 219 Ill. 2d 166, 174 (2006). First, section 103-5(a) of the speedy trial statute provides that a defendant who is continuously held in custody for an offense must be brought to trial within 120 days, with the exception of delays occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2022). "The 120-day speedy-trial period begins to run automatically if a defendant remains in custody pending trial." *People v. Phipps*, 238 Ill. 2d 54, 66 (2010). Second, section 103-5(b) of the speedy trial statute applies to a defendant who is on pretrial release or recognizance. 725 ILCS 5/103-5(b) (West Supp. 2023). It sets forth a 160-day speedy trial term "unless delay is occasioned by the defendant" and states that a defendant's demand for trial "shall be in writing." *Id.* Third, section 3-8-10 of the Unified Code of Corrections (the intrastate detainers statute) (730 ILCS 5/3-8-10 (West 2022)) states that section 103-5(b) of the speedy trial statute "shall also apply to persons committed to any institution or facility or program of [DOC] who have untried complaints, charges or indictments pending in any county of this State."

¶ 48         "[A] defendant is subject to whatever speedy-trial statute applies at the time he or

she makes a speedy-trial demand." *Wooddell*, 219 Ill. 2d at 177. When a defendant is not tried within the applicable statutory period, he or she "must be released from custody and is entitled to have the charges dismissed." *People v. Hall*, 194 Ill. 2d 305, 327 (2000); see 725 ILCS 5/103-5(d) (West 2022).

¶ 49 Two standards of review apply to speedy trial issues. *People v. Pettis*, 2017 IL App (4th) 151006, ¶ 17. " 'The trial court's determination as to who is responsible for a delay of the trial is entitled to much deference, and should be sustained absent a clear showing that the trial court abused its discretion.' " *Id.* (quoting *People v. Kliner*, 185 Ill. 2d 81, 115 (1998)); see *People v. Yankaway*, 2025 IL 130207, ¶ 59 (stating that "[i]n a statutory speedy-trial case, a circuit court's determination as to whether a period of delay is attributable to the defendant and how much delay to attribute is entitled to great deference" and will not be reversed "absent a clear abuse of discretion"). "However, the ultimate question as to whether [the] defendant's statutory right to a speedy trial has been violated is a question of law subject to *de novo* review." *Pettis*, 2017 IL App (4th) 151006, ¶ 17.

¶ 50 Here, OSAD initially asserts that the intrastate detainers statute applied to defendant. We disagree.

¶ 51 As noted, "[a] defendant is subject to whatever speedy-trial statute applies at the time he or she makes a speedy-trial demand." *Wooddell*, 219 Ill. 2d at 177. In this case, defendant initially filed a *pro se* demand for trial citing the speedy trial statute in April 2023, while he was represented by counsel. Although that *pro se* demand had no effect (see *People v. Bell*, 2018 IL App (4th) 151016, ¶ 28 (stating "a defendant has no authority to file *pro se* motions when he or she is represented by counsel," and a trial court should not consider such motions)), on August 17, 2023, defendant also informed the trial court that he wanted to discharge his attorney, proceed

*pro se*, and "go to trial" (see *People v. Mayo*, 198 Ill. 2d 530, 537 (2002) ("[A] defendant cannot be bound by his attorney's actions when he clearly and convincingly attempted to assert his right to discharge his attorney and proceed to an immediate trial.")). Significantly, however, at neither time was defendant a person "committed to any institution or facility or program of [DOC]." 730 ILCS 5/3-8-10 (West 2022). Thus, the intrastate detainers statute did not apply.

¶ 52 Instead, in both April and August 2023, defendant was in custody with pending charges in Peoria and Tazewell County. Accordingly, section 103-5(a) of the speedy trial statute was applicable to defendant. See 725 ILCS 5/103-5(a) (West 2022). However, the 120-day period set forth in that section did not begin to run in defendant's Tazewell County case until the proceedings in his Peoria County case were concluded.

> "[W]here a defendant is in custody awaiting trial in one county and there is a charge pending against him in another county, \*\*\* he cannot be deemed to be in custody for the latter offense until such time as the proceedings against him in the first county are terminated and he is then returned to, or held in custody for, the second county. [Citations.] This principle has been recognized even where defendant has appeared before the court in the second county, but is subsequently returned to the first county for further proceedings." (Internal quotation marks omitted.) *People v. Davis*, 97 Ill. 2d 1, 13 (1983).

See *People v. Welch*, 365 Ill. App. 3d 978, 982 (2005).

¶ 53 Here, at the time defendant was charged in the underlying Tazewell County case, he was already in custody and facing a charge of criminal sexual assault in Peoria County. The proceedings against defendant in Peoria County did not terminate until March 8, 2024, and on March 14, 2024, the trial court ordered defendant transported to Tazewell County to be held in the

underlying case. At a hearing on March 21, 2024, the State informed the court that defendant was in custody in Tazewell County. From that date to December 13, 2024, the proceedings were repeatedly continued by the agreement of the parties. See *Hartfield*, 2022 IL 126729, ¶ 35 (stating a defendant is considered to have agreed to a delay unless he objects "by making a written demand for trial or an oral demand for trial on the record." (internal quotation marks omitted)) On December 13, 2024, the court continued the case on its own motion to December 20, 2024. On December 20, 2024, the trial court set the matter for trial on January 27, 2025. Defendant's stipulated bench trial ultimately occurred on January 28, 2025.

¶ 54 Delays in defendant's case after March 8, 2024, which were not attributable to him, clearly fell short of 120 days. Given these circumstances, defendant cannot successfully claim a statutory speedy trial violation.

¶ 55 Moreover, even if we were to assume that defendant's 120-day speedy trial period began to run on August 17, 2023—when defendant informed the trial court that he wanted to discharge his counsel, proceed *pro se*, and "go to trial"—any claim of a speedy trial violation would still lack merit. In particular, the record reflects several periods where the speedy trial "clock" was tolled due to a delay occasioned by defendant, including proceedings on defendant's motion to suppress his statements to the police in August 2023, defendant's filing of an interlocutory appeal in September 2023, and numerous continuances that were agreed to by both parties.

¶ 56 B. Timely Preliminary Examination or Indictment

¶ 57 OSAD next argues that defendant can raise no viable claim that he was entitled to the dismissal of the charges against him because he did not receive a timely preliminary examination or indictment.

- 17 -

¶ 58	Section 109-3.1(b) of the Code (725 ILCS 5/109-3.1(b) (West 2022)) provides that "[e]very person in custody in this State for the alleged commission of a felony shall receive either a preliminary examination *** or an indictment by Grand Jury ***, within 30 days from the date he or she was taken into custody." The purpose of section 109-3.1(b) "is to ensure that a defendant will not be held in custody or to bail, that is, that his freedom will not be restricted, without a prompt showing of evidence that a crime has been committed." *People v. Clarke*, 231 Ill. App. 3d 504, 508 (1992).

¶ 59	Here, on June 28, 2022, defendant was initially charged in the underlying Tazewell County case. On August 4, 2022, a superseding indictment was filed. However, at the time defendant's Tazewell County charges arose, he was already in custody in Peoria County for a separate charge. The record shows that he did not appear in person in Tazewell County until August 17, 2023, and that his arrest warrant for the underlying charges was not executed until September 8, 2023, more than a year after his indictment. Under these circumstances, defendant can show no error, and we agree with OSAD that he cannot establish a viable claim based on a violation of section 109-3.1(b).

¶ 60	C. Motion to Suppress

¶ 61	On appeal, OSAD argues defendant has no viable argument that the trial court erred in suppressing the statements he made during his police interview based upon his inability to understand English.

¶ 62	"A trial court's decision on a motion to suppress is reviewed under a two-part standard." *People v. Salamon*, 2022 IL 125722, ¶ 75. "Factual findings by the trial court will be reversed only if they are against the manifest weight of the evidence, but the ultimate legal determination as to whether suppression is warranted is reviewed *de novo*." *Id.*

- 18 -

¶ 63    The United States Supreme Court's decision in *Miranda*, 384 U.S. at 444, prohibits the admission at trial of statements made by a suspect during a custodial interrogation "unless the prosecution demonstrates that the suspect has been warned of the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney." *Salamon*, 2022 IL 125722, ¶ 77. "A suspect may waive these rights, provided the waiver is made voluntarily, knowingly, and intelligently." *Id.* (citing *Miranda*, 384 U.S. at 444). "Where the defendant challenges the admissibility of an inculpatory statement by filing a motion to suppress, the State bears the burden of proving, by a preponderance of the evidence, that the statement was voluntary." *Id.* ¶ 84.

¶ 64    The record showed defendant moved to suppress his statements to the police on the basis that he could not have knowingly and intelligently waived his *Miranda* rights because he did not understand English. At a hearing on defendant's motion, the State presented testimony from Detective Cabell, who investigated the underlying offenses and, in February 2022, interviewed defendant at the Peoria County jail. Before the interview began, Cabell read defendant his *Miranda* rights and presented him with a "*Miranda* waiver form." Cabell testified defendant reported that although "he could not read or write English, *** he could understand it and spoke it." Cabell maintained that he did not have any trouble speaking with defendant in English and that defendant never indicated a lack of understanding regarding what Cabell was saying. Cabell read the waiver form to defendant twice and defendant signed the form, agreeing to be interviewed. Cabell's testimony showed that he continued to converse with defendant in English and that defendant gave appropriate and responsive answers to Cabell's questions. Cabell also spoke with defendant's employer regarding defendant's ability to speak and understand English and learned that defendant worked as a supervisor and that his employer had "an unwritten rule that [supervisors] speak

English."

¶ 65      At the hearing, the State submitted a recording of Cabell's interview with defendant. As OSAD points out on appeal, the recording corroborates Cabell's testimony, showing defendant conversing clearly with Cabell in English and appropriately responding to Cabell's questions.

¶ 66      The trial court determined the State had met its burden of proof. After defendant declined to present evidence or argument, the court denied his motion to suppress, finding the evidence failed to show that he did not understand what was occurring at the time of his challenged statements. The court's finding is not against the manifest weight of the evidence, and the record reflects no error in its determination. Thus, we agree with OSAD that defendant cannot set forth a viable claim of error with respect to the denial of his motion to suppress.

¶ 67                     D. Other-Crimes Evidence

¶ 68      OSAD next argues that defendant has no viable claim that the trial court erred in allowing the admission of other-crimes evidence, specifically, his sexual assault of I.M. in Peoria County.

¶ 69      Generally, evidence of other crimes may be admitted at trial when relevant to show *modus operandi*, intent, motive, identity, or absence of mistake with respect to the crime with which the defendant is charged but not the defendant's propensity to commit a crime. *People v. Pikes*, 2013 IL 115171, ¶ 11. The use of other-crimes evidence to show propensity "is objectionable because such evidence has 'too much' probative value," not because it lacks relevancy. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003) (quoting *People v. Manning*, 182 Ill. 2d 193, 213 (1998)). However, section 115-7.3 of the Code (725 ILCS 5/115-7.3(b) (West 2022)), provides an exception to the general rule and enables "courts to admit evidence of other crimes to

show [a] defendant's propensity to commit sex offenses if the requirements of section 115-7.3 are met." *Donoho*, 204 Ill. 2d at 176.

¶ 70   Section 115-7.3 explicitly applies to criminal cases in which "the defendant is accused of *** criminal sexual assault." 725 ILCS 5/115-7.3(a)(1) (West 2022). It states that other-crimes evidence may be admissible "and may be considered for its bearing on any matter to which it is relevant." *Id.* § 115-7.3(b). "Before the other-crimes evidence may be used, *** the statute requires the court to apply a balancing test, weighing the probative value of the evidence against the undue prejudice it may produce against the defendant." *People v. Ward*, 2011 IL 108690, ¶ 26 (citing 725 ILCS 5/115-7.3(c) (West 2006)). Regarding that balancing test, the statute provides as follows:

> "(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:
>
>> (1) the proximity in time to the charged or predicate offense;
>>
>> (2) the degree of factual similarity to the charged or predicate offense; or
>>
>> (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2022).

The trial court's admission of evidence under section 115-7.3 is reviewed for an abuse of discretion. *People v. Watts*, 2022 IL App (4th) 210590, ¶ 60.

¶ 71   Here, the State filed a pretrial motion *in limine* to admit evidence of defendant's prior sexual assault of I.M. in Peoria County under section 115-7.3 of the Code. Following a hearing, at which defendant offered no specific argument in opposition to the State's motion, the trial court granted the State's request and allowed the evidence to be admitted for "propensity

purposes." In reaching its decision, the court noted that the Peoria County sexual assault occurred on the same day as the underlying charged offenses and "during the same course of conduct." It found a high degree of factual similarity between that sexual assault and the charged offenses and emphasized the "interwoven nature of the events."

¶ 72 The record supports the trial court's findings. Specifically, the State's proffered evidence showed the prior sexual assault in Peoria County occurred on the same day as the charged offense and during the same course of events. The prior assault was also factually similar to the charged offense, as they both involved the same victim and identical criminal acts. Ultimately, the record reflects no abuse of discretion by the court in granting the State's motion to admit the other-crimes evidence. We agree with OSAD that defendant cannot raise a meritorious challenge to the court's ruling.

¶ 73 E. Confrontation Clause

¶ 74 OSAD also argues on appeal that defendant can raise no meritorious claim that his right to confront witnesses against him was violated. The record shows defendant filed a motion *in limine*, arguing that if I.M. did not testify at his trial, he would be denied his sixth amendment right to confront his accuser. At a hearing on the motion, defendant's counsel argued that defendant would not be stipulating to I.M.'s actual age and that to prove her age, the State had to either present a copy of I.M.'s birth certificate or testimony from I.M. or her mother regarding the day I.M. was born. Counsel argued that without testimony from I.M. or her mother, defendant's right to confrontation was violated. The trial court denied the motion.

¶ 75 The confrontation clause of the sixth amendment (U.S. Const., amend. VI) to the United States Constitution is applicable to the states through the fourteenth amendment (U.S. Const., amend. XIV) and "guarantees the right of an accused in a criminal prosecution to be

confronted with the witnesses against him." (Internal quotation marks omitted.) *People v. Hood*, 2016 IL 118581, ¶ 19. Pursuant to the confrontation clause, a defendant has "the right physically to face those who testify against him, and the right to conduct cross-examination." (Internal quotation marks omitted.) *Id.* The confrontation clause also "prohibits the 'admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination.' " *Id.* ¶ 20 (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). "Whether a defendant has suffered a violation of the confrontation clause presents a question of law and is subject to *de novo* review." *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 40.

¶ 76        Here, defendant's arguments regarding the evidence necessary to establish I.M.'s age did not raise a confrontation clause issue. The confrontation clause does not require the State to present any particular witness or evidence to establish its case. Rather, it grants a defendant the right to physically face the witnesses the State does present and cross-examine those witnesses. It also prohibits the State from presenting "testimonial statements" of witnesses who are not present at trial. *Crawford*, 541 U.S. at 53-54. Defendant's contention that the State was required to present testimony from I.M. or her mother to prove I.M.'s age more appropriately concerned the State's burden of proof and the sufficiency of its evidence. Moreover, defendant identified no impermissible "testimonial statements" (*id.*) which he sought to have excluded from his trial. Accordingly, the record reflects no error in the trial court's denial of defendant's motion.

¶ 77        On appeal, OSAD notes that the evidence used by the State to establish I.M.'s age included I.M.'s public school records. It argues that such records constituted business records and, as such, their admission could not result in a confrontation clause violation. We agree.

¶ 78        "Business records are *** generally admitted under the sixth amendment, not

because of their reliability under hearsay law, but because they are created for the administration of an entity's affairs, not for the purpose of establishing or proving some fact at trial." *People v. Coleman*, 2014 IL App (5th) 110274, ¶ 150 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)). Notably, below, defendant did not raise a specific challenge to the admission of I.M.'s public school records on confrontation clause grounds. However, even if he had done so, his claim would have lacked merit, as such records are not testimonial in nature. Accordingly, we agree with OSAD that defendant can raise no viable claim on appeal that the court erred in denying his motion *in limine* alleging a confrontation clause violation.

¶ 79                          F. Sufficiency of the Evidence

¶ 80          On appeal, OSAD further argues that defendant has no viable claim that the State failed to carry its burden of proof.

¶ 81          "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35. "When reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Harvey*, 2024 IL 129357, ¶ 19. In making that determination, this court must view the evidence in the light most favorable to the prosecution. *Id.* "All reasonable inferences are drawn in favor of a finding of guilt." *People v. Swenson*, 2020 IL 124688, ¶ 35.

¶ 82          On review, we do not retry the defendant or "substitute our judgment for that of the trier of fact on questions pertaining to the weight of the evidence or the credibility of witnesses." *People v. Conway*, 2023 IL 127670, ¶ 16. "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 83    Here, defendant was found guilty of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2022)). As charged, a defendant commits that offense by committing an act of sexual penetration when the defendant "is 17 years of age or over and holds a position of trust, authority, or supervision in relation to the victim, and the victim is at least 13 years of age but under 18 years of age." *Id.* " 'Sexual penetration' means any contact, however slight, between the sex organ *** of one person and *** the sex organ *** of another person." *Id.* § 11-0.1.

¶ 84    At trial, the stipulated facts showed I.M. disclosed to law enforcement that she was sexually assaulted by defendant in both Peoria and Morton. She described vaginal penetration by defendant and provided details about the underlying charge. I.M.'s disclosures were corroborated by other evidence, including surveillance video from the parking lot of the Quality Inn in Morton where the alleged assault occurred and a discarded condom found in the parking lot. Forensic testing indicated the presence of DNA from both defendant and I.M. on the condom. Additionally, defendant was interviewed by the police and confessed to engaging in sexual intercourse with I.M. as she described. Defendant also admitted that "he had a parental relationship with [I.M.]," I.M. had his last name, and I.M. called him " 'dad.' "

¶ 85    With respect to the ages of defendant and I.M., the stipulated facts indicated that Detective Aguilar, who investigated the alleged sexual assault in Peoria County, would testify that I.M. was born in December 2007 and defendant was born in October 1991, making them 14 and 30 years old, respectively, at the time of the offense. Cabell would also testify that he obtained I.M.'s public school records, which "confirm[ed]" her date of birth being in December 2007. Additionally, during his February 2022 interview with the police, defendant provided his own date of birth, indicated that he had known I.M. for at least 10 to 12 years, and described I.M. as being 14 years old.

¶ 86　　　　The stipulated evidence was sufficient to support each element of the charged offense, including I.M.'s age. As to that element, the evidence showed that law enforcement confirmed reports of I.M.'s age through both her public school records and defendant's own statements to the police. Notably, defendant acknowledged that he was a parental figure to I.M. and had known her for most of her life. Accordingly, we agree with OSAD that defendant cannot raise a viable challenge to the sufficiency of the evidence.

¶ 87　　　　　　　　　　　　G. Rule 402(a) Admonishments

¶ 88　　　　Finally, OSAD argues that defendant can raise no viable claim that the trial court erred in failing to provide guilty plea admonishments because his stipulated bench trial was tantamount to a guilty plea.

¶ 89　　　　Rule 402(a) sets forth admonishments the trial court must give a defendant who pleads guilty or stipulates "that the evidence is sufficient to convict." Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The rule requires that the court inform the defendant, and determine his understanding, of the nature of the charges against him, possible sentences, and the rights he waives by pleading guilty or stipulating to the sufficiency of the evidence. *Id.*

¶ 90　　　　"If a stipulated bench trial is tantamount to a guilty plea, the trial court must give the defendant guilty plea admonishments pursuant to Rule 402(a)." *People v. Galarza*, 2023 IL 127678, ¶ 47. "[A] stipulation is tantamount to a guilty plea" when "(1) the State's entire case is to be presented by stipulation *and* the defendant does not present or preserve a defense; *or* (2) the stipulation includes a statement that the evidence is sufficient to convict the defendant." (Emphases in original.) *People v. Clendenin*, 238 Ill. 2d 302, 322 (2010). The necessity of Rule 402(a) admonishments in connection with a stipulated bench trial is a question of law and subject to *de novo* review. *Galarza*, 2023 IL 127678, ¶ 47.

¶ 91      In this case, the record shows that at the time defendant waived his right to a jury trial, his counsel informed the trial court that the parties had agreed to a stipulated bench trial but not a stipulation as to defendant's guilt. The stipulated facts included no statement that the evidence was sufficient to convict defendant. Additionally, at trial, defendant's counsel argued that the stipulated facts failed to establish defendant's guilt beyond a reasonable doubt. In particular, counsel argued the evidence, specifically, defendant's statements to the police and I.M.'s public school records, was insufficient to prove I.M.'s age at the time of the offense.

¶ 92      Under these circumstances, the record fails to support an argument that defendant's stipulated bench trial was tantamount to a guilty plea. We agree with OSAD that defendant has no viable claim that he was entitled to Rule 402(a) admonishments.

¶ 93                                    III. CONCLUSION

¶ 94      For the reasons stated, we grant OSAD's motion to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 95      Affirmed.